## Rasmussen *v.* Dresnin.

Argued April 27, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Harry C. Liebman,* for appellants.

*F. X. McClanaghan,* with him *Cogan & McClanaghan,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, May 23, 1955:

When Mrs. Estelle Rasmussen, the wife-plaintiff in this case, driving her car westwardly on Whitby Avenue in Philadelphia, arrived at a point 3 feet from Whitby's intersection with 57th Street, she saw a car (to be referred here as the Dresnin car) 68 feet to her left on 57th Street moving toward the same intersection. Having a green light, Mrs. Rasmussen proceeded unabatedly ahead. When she reached the middle of the crossing she noted that the Dresnin car was heading directly toward her. She attempted to avoid the heralded collision by accelerating her speed and thus shot ahead, but the Dresnin car continued on its forward course and struck the plaintiff's car when she had only 5 feet more to go before reaching the safety of the west curbline of 57th Street. On this state of facts the Court below, in a trespass action brought by

Mrs. Rasmussen and her husband* against Mrs. Dresnin, entered a nonsuit on the theory that Mrs. Rasmussen was guilty of contributory negligence as a matter of law.

The nonsuit was improvidently entered. In accordance with the Motor Vehicle Code (Act of May 1, 1929, P. L. 905, Sec. 1026, 75 Purdon's P.S.A.), Mrs. Rasmussen had the right of way under three different provisions of the Act: (1) She had a green light. (Sec. 905) (2) She approached the intersection from the right. (Sec. 1013, a). (3) She entered the intersection first. (Sec. 1013, b).

While it is true that a motorist, even with a traffic light in his favor, may not blindly dash into an intersection, he is not required to anticipate that other motorists will violate the law. What was said in the case of *Sommer v. Blacka,* 153 Pa. Super. Ct. 643, 645, could well apply here: "A motorist need not anticipate that after he is committed to the crossing another will travel 50 to 60 feet to the intersection, pass a red light and run into him."

In *Swift v. Corrado,* 292 Pa. 543, 547, this Court said: ". . . plaintiff being first at the crossing and having the right of way was not bound to keep out of defendant's way; but on the other hand, defendant was bound to keep out of his way and, as above stated, plaintiff had the right to assume he would do so."

The principle embodied in the case of *Clark v. Philadelphia Housing Authority,* 161 Pa. Superior Ct. 542, 544, is applicable here: "We think this is a plain case where plaintiff's contributory negligence could not be declared as a matter of law. Plaintiff was entitled to the protection afforded her by the fact she entered the intersection with the traffic lights in her favor."

---

* The husband died prior to the trial, and the widow, as executrix of his estate, was suggested on the record.

In refusing to lift the nonsuit the lower Court said: ". . . although plaintiff testified that she could not estimate the speed at which defendant's vehicle was traveling, it appears that as plaintiff's automobile was traveling at a speed of 15 to 20 miles per hour and the collision occurred when her automobile had traveled 38 feet (measured by the width of 57 Street (40 feet) less the 5 feet which plaintiff had not traversed and adding the 3 feet she had traversed before she entered the intersection), plaintiff's vehicle had traveled 38 feet while defendant's vehicle had traveled 68 feet. Thus, defendant's vehicle was proceeding at a speed 1.78 times greater than the speed of plaintiff's vehicle, so that defendant's vehicle was traveling at the rate of approximately 27 to 35 miles per hour." This is indeed a rather complicated formula to thrust at a motorist who, with the traffic beacon assuring him of his right to cross, is proceeding normally about his affairs. Since the plaintiff saw only the front end of the defendant's car it was practically impossible for her to estimate its speed, and it is not consistent with fairness that she should be retroactively charged with the intricate calculations leisurely worked out in the judge's study and which *now* tell her that the defendant's car was proceeding at a speed 1.78 times greater than hers. And even assuming that Mrs. Rasmussen possessed that kind of a brain which could have instantaneously worked out all the additions, subtractions, widths and distances laboriously worked out by the Court below, there was no reason for her to assume that, with a red light confronting Mrs. Dresnin, she (Mrs. Dresnin) would have continued to proceed with 1.78 greater acceleration than the plaintiff's speed.

A motorist entering an intersection under the protection of a green light, having once taken a comprehensive glance which reasonably assures him that no

incipient situation can endanger his immediate forward movement, is not required to estimate with the accuracy of a speed calculator and stop watch what the other automobilist at present out of the intersection may possibly do. To impose stoppage or sluggish retardation of a car invited by the law to keep moving is to introduce an obstacle to expeditious travel which in itself may be as conducive to accident as excessive speed. Moreover, there is no evidence that Mrs. Rasmussen was speeding. The Court below conceded that she was moving at the rate of only 15 to 20 miles per hour.

The lower Court has misapprehended the intent of the cases of *Lewis v. Quinn*, 376 Pa. 109, and *Allega v. Eastern Motor Express Co.*, 378 Pa. 1, cited in its opinion. In the *Lewis* case this Court held that the plaintiff could not recover because he failed to look to either side before he entered the intersection; and in the *Allega* case the plaintiff proceeded ahead on a yellow caution light when he saw the defendant's vehicle approaching from his right at a speed of 30 to 35 miles per hour. Neither of these situations was present in the case at bar.

The lower Court was of the belief that the plaintiff, once having seen the defendant's car outside the intersection had the duty "to continue to observe defendant's automobile so that she could stop or slow down the movement of her automobile and thus avoid a collision." For the plaintiff to have concentrated her attention on the movement of the defendant's car would have meant a relinquishing of vigilance as to traffic directly ahead and traffic to the right. As a matter of fact a truck was advancing toward the plaintiff on Whitby Avenue. This potential threat of collision could not be ignored. If it could be assumed that the plaintiff should have calculated that a car 68 feet

away might enter into a zone of possible danger to her (even though under the law the defendant was forbidden to enter that zone), the most that could be said against the plaintiff's rights would be that she was testing a possible danger, but it would distinctly be a matter for the jury to determine whether such possible danger came within the cautionary purview of a reasonably prudent person.

The lower Court said that the plaintiff looked when she was 3 feet away from the intersection but did not look *before* entering the intersection. Only the speediest photographic lens could distinguish between the difference of a view from a moving car taken at one point and the same view taken 3 feet later. With all the precision that the law requires, it has not reached, in cases of this kind, such a mathematical certitude that it can base decisions on split-second observations. In any event such a decision would have to come from a jury and not from a judge because it would be a matter of common layman's experience and not of technical law as to whether a travelling motorist could tell any more than he had previously seen of a situation when only 3 feet beyond his last view of it.

Judgment reversed and new trial granted.