575 A.2d 926

**Carl K. SMITH and Erma J. Smith, His Wife, Appellees,**

**v.**

**Robert Keith BROOKS, an Individual; Bowers Trucking, Inc., a Corporation; Victor S. Desport, an Individual; and Farabaugh Chevrolet–Oldsmobile, Inc., a Corporation.**

**Appeal of Robert Keith BROOKS, an Individual; Bowers Trucking, Inc., a Corporation.**

Superior Court of Pennsylvania.

Argued Jan. 24, 1990.

Filed May 24, 1990.

332

John P. Lydon, Pittsburgh, for appellant.

Bernard D. Marcus, Pittsburgh, for appellee.

Before CAVANAUGH, TAMILIA and HESTER, JJ.

CAVANAUGH, Justice:

This appeal is brought by defendants Robert Keith Brooks and his employer, Bowers Trucking, Inc. after denial of their motion for post-trial relief. Judgment was entered by the Court of Common Pleas of Westmoreland County after a jury awarded damages to appellees Carl K. and Erma J. Smith for injuries sustained when Brooks, who was driving a coal truck for Bowers Trucking, hit the automobile in which Mr. Smith was a passenger. Two other defendants, Victor Desport and Farabaugh Chevrolet–Oldsmobile, Inc. settled with plaintiffs after the jury trial and

are no longer parties to this action. Finding no error in the conduct of the trial, we affirm.

Plaintiffs instituted suit for damages for serious and permanent personal injuries sustained by Mr. Smith during a motor accident on August 9, 1986. Plaintiffs also sought damages for Mrs. Smith's loss of consortium. The case was tried before a jury and presided over by the Hon. Gary P. Caruso in October of 1988. The jury returned a verdict in favor of the husband-plaintiff in the amount of $1,000,-000.00 and in favor of the wife-plaintiff for her loss of consortium in the amount of $250,000.00. Damages were awarded to Mr. Smith to compensate him for medical bills and equipment, lost future earnings as a golf course consultant, permanent physical impairment, pain and suffering, and an emotional condition brought on by spinal cord damage. The jury found defendants Brooks and Bowers jointly liable for fifty percent of the verdict and Desport and Farabaugh liable for the other fifty percent. The trial court also assessed delay damages pursuant to plaintiffs' petition therefor.

Both pairs of defendants filed timely post-trial motions; Desport and Farabaugh settled with the plaintiffs after denial of their motion. On June 2, 1989, the trial court entered an order and filed an opinion denying Brooks and Bowers' motion for post-trial relief. Judgment was entered against Brooks and Bowers on June 30, 1989 and a timely appeal was filed.

This case arose out of an intersection collision at the intersection of Routes 30 and 711 in Westmoreland County near the town of Ligonier. At the time of the accident, husband-appellee was a passenger in an automobile operated by defendant Desport and owned by defendant Farabaugh Chevrolet–Oldsmobile. Desport was acting in the course of business for Farabaugh Chevrolet; the two entities were treated as one defendant throughout.

The other vehicle involved in the collision was a coal truck operated by Robert Brooks and owned by Bowers Trucking. Brooks was engaged in Bowers Trucking business at the

time of the accident. These two entities were also treated as one defendant during trial.

At the intersection where the accident occurred, Route 711 is a two-lane north and south-bound highway. Route 30 crosses Route 711 and is a divided east-west highway with two lanes in either direction; it also has, at its intersection with Route 711, a center left-hand turning lane for both eastbound and westbound traffic. When the accident occurred, the Desport vehicle was southbound on Route 711 and the Brooks truck was westbound on Route 30 in the left-hand passing lane. The front-right hand corner of Mr. Brooks' coal truck struck the left-hand side of the Desport vehicle. After impact, Mr. Brooks' truck turned on its side and slid approximately two hundred feet and twenty feet westbound on Route 30 before hitting the guardrail. Besides Mr. Smith, another passenger in the Desport vehicle, Lyman Pritts, was also injured; his estate was a plaintiff below, but is not party to this appeal.

Traffic lights control the intersection; the left-hand turning lanes have lights of a different length than those which control east or west-bound traffic. A driver headed westbound on Route 30 approaches the intersection only a short distance (150 feet) after rounding a bend from which the intersection is not visible; signs give advance warning of traffic signals ahead. The disputed issues of fact were which vehicle had the green light, whether the vehicle which had the right of way nevertheless acted unreasonably in failing to check for traffic or in travelling at an unreasonable speed, and whether Brooks unreasonably relied on certain CB transmissions made by a fellow trucker named Firestone with whom he was travelling in tandem, rather than slowing down to ascertain for himself the status of the intersection's traffic light.

As to liability, appellants allege that the trial court erroneously admitted testimony about certain CB transmissions which refer to the status of the traffic light, from which plaintiffs argued that Brooks was negligent in relying on CB transmissions rather than his own observation; that the

trial court erroneously charged the jury on the assured clear distance rule; that the trail court erroneously instructed the jury that it could find Brooks negligent for travelling at an unreasonable speed; and that the trial court erroneously denied a requested charge that Desport could be found negligent for failing to check the intersection when the light was in his favor.

On the question of damages, appellants believe the trial court erred in permitting Dr. Kasdan to testify partly on the basis of the findings of other physicians in addition to his own examination; and in permitting expert testimony on matters which appellants contend were for the jury to decide.

Finally, appellants contend that the verdict was against the weight of the evidence as to both liability and damages and was excessive given husband's earnings history.

First, appellants argue that the court should have excluded portions of the testimony of Mr. Cairns, a driver who was present at the intersection and witnessed the collision. In reviewing a trial court's admission of testimony, we will reverse only if there has been an abuse of discretion or an error of law. *Concorde Investments Inc. v. Gallagher*, 345 Pa.Super. 49, 497 A.2d 637 (1985).

The witness, Mr. Cairns, was driving a truck northbound on Route 711 and had been stopped behind two cars before the accident occurred. Mr. Cairns testified that his light (which, according to the testimony of a traffic engineer, would have been the same as that for the southbound Desport vehicle) turned green before Desport entered the intersection. After a foundation had been laid, Mr. Cairns also testified that before the collision occurred, he heard three CB transmissions over channel 19 of his CB radio, which were phrased as follows: "the light is green," "the light is (still) green," and "the light turned yellow."

The foundation that was laid for the admission of these statements was that Mr. Cairns had his CB tuned to channel 19, that he heard the transmissions as the coal truck driven

by Mr. Firestone was passing through the intersection and while the truck driven by Mr. Brooks was rounding the bend approaching the intersection, and most importantly, that Mr. Cairns' CB radio could receive signals only within a mile radius. It was uncontroverted that the intersection of Routes 30 and 711 is the only signal-controlled intersection within the reception range of Mr. Cairns' CB.

Both Mr. Brooks and Mr. Firestone, who worked for the same company, testified to having CB radios operating in their trucks at the time of the collision and both admitted that they were "probably" tuned into channel 19, as that was the channel they usually used. Moreover, both admitted that they were "running together"; both picked up their loads of coal at about the same time from the same place that morning and both were driving to the same destination. Finally, both stated it was possible that they had some conversation over the CB that morning although Mr. Firestone denied having broadcast the status of the traffic signal and Mr. Brooks denied having heard or at least having relied on any such transmissions. Mr. Brooks' approach to the intersection was from around a bend in the road which would have prevented him from ascertaining the status of the traffic light until only a short time before the intersection.

Appellants argue that the three statements about the status of the traffic signal were introduced to prove the truth of the matter asserted and were inadmissible hearsay. In fact, the truthfulness of these statements was largely irrelevant to plaintiff's case and would only minimally have supported a finding of liability based on the theory that Mr. Brooks ran a red light. Appellants themselves agree that the CB transmissions were not material to establish the color of the light. Brief of Appellant, at 23–24.

Rather, the statements were introduced to show that Mr. Brooks negligently relied on the transmissions rather than on his personal observation when judging whether to slow down before proceeding through the intersection. As such, they were not being used to prove the truth of the matter

asserted (the color of Mr. Brooks' light) and are therefore not hearsay.

■ It should also be noted that there is no authentication problem with this testimony since the usefulness of the evidence to plaintiffs did not depend upon the source of the CB transmissions. It did not matter to plaintiffs' theory of the case whether Mr. Firestone or another individual broadcast the status of the light; all that was needed to make the evidence relevant was that Mr. Brooks was in a position to hear the CB broadcasts, from which it could be inferred, given other evidence in the case, that Brooks relied upon them. Mr. Brooks himself admitted that his radio was always on, that he usually used channel 19, and that he was probably tuned into it that day.

■ In any event, Mr. Cairns, who was himself a trucker and a CB user, testified that he believed that the driver of the first coal truck (Firestone) was speaking to the driver of the second coal truck (Brooks) based on hearing the transmissions at the same time as he observed the two coal trucks travelling through the area of the intersection together. Mr. Cairns based his opinion, which he was qualified to give, on his experience that trucks travelling in tandem often communicate via CB as to road conditions ahead. Given the strong circumstantial evidence in the case as to the source of the transmissions (which could only have been broadcast from the intersection of Routes 30 and 711 given the range of Mr. Cairns' CB), the judge was correct in finding that the conversation was properly authenticated. *Commonwealth v. Stewart*, 304 Pa.Super. 382, 450 A.2d 732 (1982).

■ Even if it could be said that the jury used the transmissions for the truth of the matter asserted to infer that Mr. Brooks' light was red by the time he reached the intersection and that he was therefore negligent in failing to stop, the CB transmissions qualify as present sense impressions. Declarations concerning conditions which the hearsay declarant is observing at the time of his declaration

are admissible because their relative immediacy "insures that there will have been little opportunity for reflection or calculated misstatement." *Commonwealth v. Coleman,* 458 Pa. 112, 326 A.2d 387 (1974); *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986). As we have already stated, given the range of the witness' CB, the transmissions necessarily referred to the status of the lights at the intersection of Routes 30 and 711. Coupled with Mr. Cairns' visual observation that the lights controlling Route 711 were red [1], Cairns' simultaneous perception of CB transmissions that the light was green or yellow demonstrates that the speaker was referring to lights controlling Route 30 and thus the progress of Mr. Brooks' vehicle. Given the special facts of this case, we observe that there existed a "sufficient confluence of time and events to vest special reliability in the statements." *See, Coleman, supra* (present sense impression exception applied although declarations were made over telephone to absent listener).

Each of these statements was a live or contemporaneous report of the current status of the lights made under circumstances which would vest the statement with reliability and therefore qualifies as a present sense impression, admissible to prove the truth of the matter asserted. Therefore, we cannot say that the judge erred in admitting this testimony.

 Second, appellants argue that the trial court erroneously instructed the jury on the assured clear distance rule which states that a driver must not maintain a speed in excess of that which will permit him to stop within the assured clear distance ahead.[2] 75 Pa.C.S.A. § 3361. An

1. Several witnesses testified and it was generally undisputed that the color of the lights for Route 711 northbound and southbound were always identical.

2. Appellees argue that this issue and the third issued raised by appellants, relating to the duty to drive at a reasonable speed, were not properly preserved because neither charge was requested and the automatic exceptions which the court noted only referred to instructions which were requested and denied. However, because the trial court chose to address these issues in its opinion accompanying its denial of post-verdict motions, we, too, will reach the merits.

erroneous jury instruction may provide the basis of a new trial if it is shown that the instruction was fundamentally in error and that it may have been responsible for the verdict. *Eck v. Powermatic Houdaille*, 364 Pa.Super. 178, 527 A.2d 1012 (1987).

Previously, we have held that "the applicability of the assured clear distance ahead rule is generally a question of fact for the jury, especially if the facts are disputed or dependant upon the credibility of oral testimony." *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042 (1983). There is evidence in the record to support a finding by the jury that Brooks violated the assured clear distance rule. Brooks himself testified that the Desport car entered the intersection while he was 150 feet away. Based on the testimony of various witnesses and photographs of the intersection, the jury could have found that the assured clear distance was less than 150 feet. For instance, the jury could properly have concluded that the assured clear distance was limited by the presence of a busy intersection, especially if it found that Mr. Brooks' light had already turned yellow or red.

In the alternative, the jury could have found that Brooks' truck was more than 150 feet away when Desport crossed the westbound lane based on the testimony of Mr. Cairns and Mr. Desport as to the time which elapsed between the changing of the light and the collision, together with Mr. Brooks' estimate of his own speed. Evidence existed to support a finding that the rule had been violated and it was not error to instruct the jury on it.

Third, appellants contend that the court erred in instructing the jury that it could find Brooks negligent for travelling at an unreasonable rate of speed. Again, we find that this issue was a proper one for the jury's consideration in light of the evidence. Even though there was no evidence that Brooks was exceeding the posted speed limit, one need not exceed the posted speed limit to be found liable for travelling at an unreasonable speed. The reasonableness of

one's speed is based on a number of factors, such as road and weather conditions, time of day, and congestion. In *MacDougall v. Chalmers,* this court stated that "regardless of established speed limits or privileges, no person is privileged to drive except at a careful and prudent speed with his car under reasonable control; ... and it is for the jury to say whether he has done so." 192 Pa.Super. 401, 162 A.2d 51 (1960).

In the instant case, the jury could reasonably have concluded that Mr. Brooks was driving in excess of the posted speed limit based on the truck's momentum following the collision or the amount of time other witnesses claimed it took for the truck to travel a certain distance. Alternatively, the jury might have concluded that Mr. Brooks' speed was unreasonable because he knew from highway signage that he was approaching a controlled intersection from a blind curve in the road.

 Fourth, appellants contend that the trial court erred in refusing an instruction that a motorist has a duty to continue looking as he proceeds through an controlled intersection. It is well settled that a trial judge may properly refuse a litigant's requested instruction when the substance thereof has been adequately covered in the general charge. *Perigo v. Deegan,* 288 Pa.Super. 93, 431 A.2d 303 (1981). This is what happened in the instant case.

 Initially, we note that in *Imes v. Empire Hook and Ladder Co.,* 247 Pa.Super. 470, 372 A.2d 922 (1977), we found that "a motorist entering an intersection with a green light in his favor has a right to assume that those on intersecting streets will obey the law." A motorist does not have an affirmative duty, as a matter of law, to continue looking after entering the intersection.

 Furthermore, where a trial court has given a general negligence instruction and has read the applicable provisions of the motor vehicle code, it is not necessary that the court also instruct on a driver's duty to look while proceeding through an intersection. *Perigo, supra.* The court

specifically instructed the jury, that "if you find that the light was in his [Desport's] favor, in other words if it was green, still requires a determination by you as to the reasonableness of his [Desport's] actions under the circumstances." The court also instructed the jury on an act of assembly which says that no person should move a vehicle while it is stopped, standing, or parked, unless the movement can be made with safety and told the jury that violation of this act constituted negligence as a matter of law.

A motorist is only charged with a duty to look for traffic as he advances through an intersection where he does not have the right of way, is at an uncontrolled intersection, or initially has only an obstructed view of the intersection. When a driver has a green light in his favor, his duty to look is of a lesser degree than when the intersection is uncontrolled. *Bascelli v. Bucci*, 244 Pa.Super. 347, 368 A.2d 754 (1976). Where, as here, there is no evidence that the motorist received timely warning that his confidence in the other's law-abidingness is misplaced, it is not negligence to rely on others to obey traffic controls. *Id., supra.*

A motorist entering an intersection under the protection of a green light, having once taken a comprehensive glance which reasonably assures him that no incipient situation can endanger his immediate forward movement, is not required to estimate with the accuracy of a speed calculator and stop watch what the other motorist at present out of the intersection may possibly do. *Ramussen v. Dresnin*, 382 Pa. 51, 114 A.2d 182 (1955). Therefore, the testimony of Mr. Desport that he saw the coal truck coming around the bend before his own light turned green but did not check again because he perceived that the truck had plenty of time to stop did not warrant the requested instruction, which overstated Mr. Desport's duty of looking.

Fifth, appellants contend that the trial court improperly admitted Dr. Kasdan's testimony relating to dam-

ages, which was based in part on the findings of other physicians. Having read Dr. Kasdan's testimony in its entirety, we are satisfied that Dr. Kasdan testified to his own observations, opinions, and conclusions based only in part on his review of the records of prior treating physicians. Moreover, he did not merely quote from or summarize the opinions of others, but used records of Mr. Smith's prior treatment in his own examination, diagnosis, and treatment.

Even if Dr. Kasdan had not been a treating physician, his testimony based in part upon the reports of others would still have been proper under the rule set out in *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971). The *Thomas* court adopted a rule allowing medical witnesses to express opinion testimony based, in part, upon reports of others which are not in evidence, but upon which the expert *customarily* relies in the practice of his profession. The factual situations in *Thomas* and subsequent cases applying the rule demonstrate that the underlying reliability of records upon which opinion testimony is partly based does not hinge so much upon the testifying expert's own reliance on the records during his course of treatment as it does upon the interest which the *maker* of the record has in describing accurately that which she personally observed during her course of treatment or other discharge of professional responsibilities.

Dr. Kasdan testified, and it is not seriously disputed, that the records he relied upon were the kind that others in his profession would customarily review in connection with the examination of a patient. Moreover, he personally examined and ordered tests on Mr. Smith; in large part his testimony was based on personal observation. There was no error in admitting his testimony.

Sixth, appellant contends that Professor Slesinger should not have been permitted to testify. Professor Slesinger explained to the jury the use of government life and work-life expectancy tables and performed a calculation

factoring in earnings projections based on the testimony of other experts during the trial.

It is well-settled that the admission of expert testimony is a matter within the sound discretion of the trial court, whose decision will not be reversed unless the court clearly abused that discretion. *Pirches v. General Accident Insurance Co.*, 354 Pa.Super. 303, 511 A.2d 1349 (1986) (citing other cases). Expert testimony is admissible when it involves explanations and inferences not within the ordinary training, knowledge, and experience of the jury. *Id.* Expert testimony is routinely used in the courts of this Commonwealth to establish or refute actual expected future earning capacity. *Mecca v. Lukasik*, 366 Pa.Super. 149, 530 A.2d 1334 (1987). A party is entitled to introduce expert or other evidence to show earning power. *Fish v. Gosnell, supra.*

Having read Dr. Slesinger's testimony, we are satisfied that it dealt with complex economic issues outside of the ordinary juror's experience and that it was based solely on facts in evidence, admissible government tables, and the witness' own expertise. The trial court did not abuse its discretion in admitting this testimony.

Seventh, appellant argues that the verdict was against the weight of the evidence. Although we are not certain that an appellate court in this Commonwealth is still authorized to review the weight of the evidence, we find nonetheless that the verdict was not against the weight of the evidence.

The traditional standard for a weight of the evidence inquiry is whether the verdict is so contrary to the evidence as to shock one's sense of justice. *Burrell v. Philadelphia Electric Co.*, 438 Pa. 286, 265 A.2d 516 (1970). In a case where the credibility of witnesses is at issue, the weight to be assigned the testimony of various witnesses is within the exclusive province of the jury. *Smith v. Shaffer*, 511 Pa. 421, 515 A.2d 527 (1986). The jury's verdict is conclusive as long as it is based on substantial, albeit

conflicting, evidence. *Standard Pipeline Coating Co. v. Solomon & Teslovich, Inc.,* 344 Pa.Super. 367, 496 A.2d 840 (1985). In this case, there was ample testimony from which the jury found negligence and damages.

Lastly, appellants contend that the jury's verdict was excessive. A jury verdict should not be set aside for excessiveness unless it shocks the court's sense of justice. *Ammon v. Arnold Pontiac–GMC, Inc.,* 361 Pa.Super. 409, 522 A.2d 647 (1987). The factors to be considered are: (1) the severity of the injury; (2) whether the plaintiff's injury is manifested by objective physical evidence instead of merely the subjective testimony of the plaintiff; (3) whether the injury is permanent; (4) whether the plaintiff can continue with his employment; (5) the plaintiff's out-of-pocket expenses. *Id.*

A brief review of the Smiths' damages illustrates that the verdict was not excessive.[3] Mr. Smith sustained severe injuries, including a neurologic brain disorder and crippling spinal compression. He was required to undergo two major operations and a painful course of physical therapy which was still ongoing as of the date of trial. Mr. Smith's brain dysfunction was indicated objectively on an electroencephalogram and is manifested by spells of uncontrollable crying, one of which began to occur while he was on the witness stand. Spinal compression was shown by various medical tests and is manifested in continued stiffness, muscle spasms, and a spastic gait. Although Mr. Smith was an elderly man at the time of the accident, there was ample testimony to show that before the accident he was in robust good health and physically more active than are many persons twenty years younger.

Two and a half years after the accident, Mr. Smith was still suffering from crying spells, loss of memory, swelling of the limbs, muscle twitches, gait disorder, weakness, stiffness, and chronic pain, all of which will be more or less

---

3. In this regard, we note that the trial court, which had the opportunity to observe the plaintiffs and the witnesses as they testified, also did not believe the verdict was excessive or unreasonable.

permanent. Mr. Smith has been prevented from continuing with his career as a golf course consultant because of his difficulties in travelling, meeting people, and inspecting golf course turf, all resulting from injuries sustained during the accident.

Appellants stress the fact that Mr. Smith earned considerably less than his projected earnings during his prior career as a golf course manager; however, there was extensive, unrefuted testimony that the profession has changed considerably since Mr. Smith went into temporary retirement a few years ago. Several witnesses testified, without contradiction, that Mr. Smith's profession was highly specialized, that he was probably the best in the country at what he did, and that the money made by others in the field had increased dramatically within the past few years.

It was for the jury to determine if Mr. Smith had intended to start consulting again after a semi-retirement period of five years as he and others had testified. Certainly, much unrefuted testimony establishes that he had considerable earning capacity and that he was, moreover, an extremely active individual before the accident.

With respect to the loss of consortium claim for which Mrs. Smith was awarded $250,000.00, the evidence establishes that she lost the services and society of a healthy husband and that much of the onus of his physical and neurological difficulties fell upon her as well. As the trial court aptly noted, the aid, comfort, and society provided by one's companion may be most valuable later on in life. Having thoroughly reviewed the transcript, we do not find the damages awarded to either plaintiff excessive.

Judgment affirmed.