## Glover v. Prudencio

C.P. of Dauphin County, no. 5080 S 1998.

*April L. Strang-Kutay,* for plaintiff.
*Evan Black,* for defendant.

LEWIS, *J.,* September 27, 2001—Before this court is a motion for post-trial relief arising from a medical malpractice action for damages instituted against defendant Jose N. Prudencio M.D. in connection with the medical treatment provided to plaintiff Cindy S. Glover-Peters. The parties filed briefs in connection with the motion and oral argument was heard on July 23, 2001. For the foregoing reasons, the defendant's motion is denied.

The plaintiff, together with her husband, Leonard Peters, commenced this action in September of 1999. Prior to trial, on January 16, 2001, defendant filed a motion to preclude testimony of plaintiff's expert, Dr. Joseph Harryhill, which this court denied. On January 18, 2001, plaintiffs filed a motion to preclude the expert testimony of defense witness, Dr. Paul Douglass, which this court granted. A jury trial began on January 22, 2001 and concluded on January 25, 2001. At the conclusion of the trial, the jury found that Dr. Prudencio was negligent and entered a verdict in favor of Mrs. Glover-Peters for $250,000.

## FACTUAL HISTORY

On November 15, 1996, plaintiff Cindy Glover-Peters, was admitted to the Polyclinic Medical Center and underwent a laproscopic hysterectomy performed by Dr. Ayodeji Bakare, a gynecologic surgeon. Following the operation, Mrs. Glover-Peters complained of abdominal pain and an unusual amount of blood was found in her urine. Twenty-four hours later, these conditions continued, which prompted Dr. Bakare to order a consultation with urologist, Dr. Prudencio.

On November 16, 1996, Dr. Prudencio ordered an intravenous pyelogram (IVP) which revealed an obstructed left ureter preventing urine flow from Mrs. Glover-Peter's left kidney to her bladder. Dr. Prudencio performed a cystoscopy to help determine the location of the blockage but then found it necessary to perform an exploratory laparotomy and made an incision into plaintiff's abdomen to free the obstruction. During the procedure, Dr. Prudencio discovered a stitch very close to the left

ureter and a pre-existing surgical tear in the wall of the bladder. Dr. Prudencio placed a double J stent through plaintiff's ureters to assist with freeing the obstruction and salvaging the kidney. Following placement of the stents, Dr. Prudencio carried out closure of the bladder using a single layer of suture.

On November 20, 1996, Mrs. Glover-Peters was discharged from the hospital and utilized a catheter during her recuperation. She reported having urinary incontinence directly after the procedure and initially thought it was normal. On November 25, 1996, at a follow-up appointment with Dr. Prudencio, Mrs. Glover-Peters reported that she was experiencing severe pain from the catheter and urinary leakage around the catheter tubing. Dr. Prudencio advised that she was experiencing a bladder spasm, which is a common condition following the surgeries she had just undergone. Mrs. Glover-Peters continued to experience the pain and the incontinence in subsequent weeks. She contacted Dr. Prudencio with her complaints and he prescribed Levsinex to control the bladder spasm and ordered a cystogram to determine if it was safe to remove the catheter. During the procedure, it was determined that the plaintiff's surgical wounds and bladder were well healed allowing for her catheter to be removed.

Dr. Prudencio continued to follow the patient for her urinary incontinence until the spring of 1998. In September 1998, Mrs. Glover-Peters went to the Pennsylvania Hospital in Philadelphia where she sought a second opinion from Dr. Joseph Harryhill about the source of her incontinence. Dr. Harryhill examined Mrs. Glover-Peters performing a physical examination, cys-

toscopy and cystometric evaluation. In the course of his examination, Dr. Harryhill observed a pinpoint opening in the region of the bladder trigone consistent with a vesico-vaginal fistula as well as pooling of urine in the vagina after the bladder had been filled with irrigant. Dr. Harryhill observed that Mrs. Glover-Peters did not leak urine through her urethra with measures commonly related to stress incontinence, such as coughing.

Mrs. Glover-Peters next visited Dr. R. Scott Owens on March 30, 1999. Dr. Owens was aware of Dr. Harryhill's previous impression of a fistula and he performed a cystoscopy upon Mrs. Glover-Peters and noted a small vesico-vaginal fistula in the mid-trigone region of her bladder. Dr. Owens suggested surgery designed to cure the vesico-vaginal fistula, however, Mrs. Glover-Peters was diagnosed with the hepatitis C virus in the fall of 1998 and continues to undergo a regimen of immune-suppressing chemotherapy rendering her unable to have the surgery until completion of this treatment.

On September 1, 1999, plaintiffs filed a complaint against Dr. Prudencio seeking damages in connection with his treatment of Mrs. Glover-Peters. Plaintiffs alleged at trial that Dr. Prudencio was negligent in failing to inspect the bladder adequately during the November 1996 operation and failing to perform an appropriate closure of the bladder. Further, the suit alleged that these departures from the standard of care increased the risk that Mrs. Glover-Peters would develop the condition of vesico-vaginal fistula.

At trial, plaintiffs claimed that Mrs. Glover-Peters suffered from a vesico-vaginal fistula and besides pain and suffering was required to undergo additional medical

procedures to treat her urinary incontinence. In addition, plaintiffs claimed past and future loss of earnings, and earning capacity, as well as humiliation and embarrassment. Plaintiffs further claimed special damages associated with urologist, Dr. Owens' care, as well as care rendered by Dr. Joseph Harryhill. Additionally, Dr. Harryhill testified concerning the nature of the surgical procedure Mrs. Glover-Peters would require in an effort to attempt a surgical correction of her vesico- vaginal fistula with approximate costs for the future surgery in the realm of $20,000 to $30,000.

Defendant has raised numerous issues in his motion for post-trial relief. First, defendant requests that this court grant a judgment n.o.v. because the verdict was against the weight of the evidence that the plaintiffs presented to prove medical negligence. In the alternative, the defendant contends that a new trial is warranted because of plaintiffs' counsel's remarks during summation, an improper verdict slip, denial of his pretrial motion, and the granting of plaintiffs' pretrial motion. Furthermore, the defendant contends that a new trial should be granted because of certain evidentiary errors made by this court when it precluded plaintiffs' admissions from a prior action, admitted evidence as rebuttal testimony, admitted certain hearsay statements, and permitted plaintiffs' expert to testify about unrelated medical treatment. Lastly, defendant requests a new trial because this court failed to instruct the jury of a charge proposed by the defendant, the jury's verdict was excessive, and in the alternative, the defendant requests that a remittitur be granted.

## JUDGMENT N.O.V.

In reviewing a motion for judgment n.o.v. the evidence and all reasonable inferences must be considered in the light most favorable to the verdict winner, and any conflict in the evidence must be resolved in her favor. *Gunn v. Grossman,* 748 A.2d 1235, 1238 (Pa. Super. 2000). Further, a judge's assessment of the evidence should not be based on how he would have voted if he were a jury member, but on the facts as they come through the course of the jury's deliberations. *Id.* Specifically, the Superior Court has set forth the standards as stated below:

"There are two bases upon which a judgment n.o.v. can be entered: (1) the movant is entitled to judgment as a matter of law . . . and/or (2) the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant, . . . With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas, with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure." *Moure v. Raeuchle,* 529 Pa. 394, 402-403, 604 A.2d 1003, 1007 (1992); accord *Nogowski v. Alemo-Hammad,* 456 Pa. Super. 750, 760, 691 A.2d 950, 955-57 (1997) (en banc), *appeal denied,* 550 Pa. 675, 704 A.2d 638 (1997).

Additionally, judgment n.o.v. should not be entered in a case where the evidence is conflicting upon a material fact. *Gunn,* 748 A.2d at 1239. Moreover, when the evidence involves the credibility of a witness, it is within

the province of the jury to assess the worth of the testimony. *Id.*

Defendant argues that he should be granted a judgment n.o.v because the plaintiffs failed to present sufficient evidence at trial, expert or otherwise, to establish the elements required to succeed on their claims of medical negligence. In order to establish a cause of action for medical negligence, a plaintiff must prove that the defendant owed the plaintiff a duty, that the duty was breached, that the breach was the cause of the injury and that damages resulted from the harm caused. *Checchio v. Frankford Hospital-Torresdale Division,* 717 A.2d 1058, 1060 (Pa. Super. 1998). A plaintiff is also required to present an expert witness who will testify, to a reasonable degree of medical certainty, that the acts of the physician deviated from acceptable medical standards, and that such deviation was the proximate cause of the harm suffered. *Id.,* see also, *Welsh v. Bulger,* 548 Pa. 504, 698 A.2d 581 (1997); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978).

Defendant suggests that the plaintiffs' evidence was insufficient because they only offered one expert witness to show that Dr. Prudencio breached the standard of care. This court finds that Dr. Joseph Harryhill, plaintiffs' expert, was qualified to address all of the salient issues in this case. He is a board-certified urologic surgeon who is affiliated with Pennsylvania Hospital and performs surgery two full days per week. Dr. Harryhill personally examined the plaintiff and made the diagnosis of a vesico-vaginal fistula for which he can perform corrective surgery when the plaintiff has completed her regimen of chemotherapy for hepatitis C.

As an expert, he testified that Dr. Prudencio was negligent in his surgical technique because he failed to surgically open and explore Mrs. Glover-Peter's bladder upon discovering the pre-existing tear, performed an inadequate closure of the bladder and failed to diagnose a vesico-vaginal fistula, the cause of her incontinence. (N.T. at 185.) Dr. Prudencio testified that the bladder tear, which he repaired, was nowhere near the trigone area, such testimony is not consistent with his operative report, nor is it consistent with the observations made by Drs. Harryhill and Owens. (N.T. at 182-83.) It is clear that the jury was faced with conflicting evidence related to a material fact and a credibility issue concerning Dr. Prudencio's recollections and Dr. Harryhill's findings. The jury based its decision on the evidence that was presented at trial and had the opportunity to accept or reject that evidence. As such, defendant's motion for judgment n.o.v. is denied because this court will not invade the province of the jury to assess the worth of the evidence.

## MOTION FOR A NEW TRIAL

Defendant next argues that if this court denies the judgment n.o.v, then, in the alternative, a new trial should be granted based on certain evidentiary errors. The decision to grant a new trial is within the discretion of the trial court. *Mitchell v. Gravely International Inc.,* 698 A.2d 618 (Pa. Super. 1997). Absent an abuse of discretion or error of law, a trial court's decision regarding the grant or refusal of a new trial will not be reversed on appeal. *Commonwealth v. English,* 548 Pa. 528, 699 A.2d 710 (1997). In making the determination to grant a new trial, the court must assess whether the verdict is mani-

festly against the weight of the evidence or contrary to the evidence. *Martin v. Evans,* 551 Pa. 496, 711 A.2d 458 (1998). A new trial may also be granted where the verdict entered is excessive. *Sprague v. Walter,* 441 Pa. Super 1, 656 A.2d 890 (1995).

### Remarks Made by Plaintiffs' Counsel During Summation

First, the defendant contends that remarks made by plaintiffs' counsel during her closing argument were prejudicial. The remarks were in reference to the lack of evidence from the other surgeons present in the operating room regarding the location of the laceration in the bladder. A trial judge is in the best position to observe the atmosphere in which a trial is being conducted and to determine whether a statement in the heat of a trial by counsel has had a prejudicial effect on the jury. *Clark v. Hoerner,* 362 Pa.Super. 588, 525 A.2d 377 (1987). Specifically, in *Wagner v. Anzon Inc.,* 453 Pa. Super. 619, 635, 684 A.2d 570, 578 (1996), the Superior Court wrote, "any prejudicial remarks made by counsel during argument can be handled 'within the broad powers and discretion of the trial judge and his actions will not be disturbed on appeal unless there is an obvious abuse of discretion.' " Furthermore, the Superior Court has found curative instructions to be sufficient to correct any improper statements made during summations. See generally, *Wilf v. Philadelphia Modeling and Charm School Inc.,* 205 Pa. Super. 196, 208 A.2d 294 (1965).

The defendant cites *Bennett v. Sakel,* 555 Pa. 560, 725 A.2d 1195 (1999), where the trial court was reversed because it denied a mistrial and a curative instruction. In *Bennett,* the trial court allowed an attorney, during clos-

ing argument, to encourage the jury to draw an adverse inference concerning witnesses not called. *Id.* at 562, 725 A.2d at 1196. Further, the Supreme Court in *Bennett* said it was error for the court to instruct the jury to draw whatever inferences it may from the attorney's remarks. *Id.*

The instant case is distinguishable because this court did provide a curative instruction advising the jury that they may not make any inferences as to why the witnesses were not present or what their testimony might have been. This court addressed the remarks in question with a curative instruction: "consider only the evidence that was presented here in the courtroom." (N.T. at 497.) Moreover, this court advised jurors that they could not infer anything from the failure of witnesses to appear, stating that "you can't guess or infer what those witnesses might have said had they been here." *Id.* Therefore, a new trial is not warranted because this court finds that the remarks were not prejudicial to the defendant.

### Verdict Slip Questions

The defendant's second contention is that he should be granted a new trial based on a verdict slip that confused the jury because the slip combined the questions of substantial factor and increased risk. The following interrogatories were contained in the verdict slip sent out with the jury:

"(1) Do you find that Dr. Prudencio was negligent?

"If your answer to question no. 1 is yes, go to question 2. If your answer is no, please return to the courtroom.

"(2) Do you find that Dr. Prudencio's negligence was a substantial factor that increased the risk that plaintiff would suffer harm?

"If your answer to question no. 2 is yes, go to question 3. If your answer is no, please return to the courtroom.

"(3) If you answered yes to question nos. 1 and 2, what damages do you award . . . ."

To support his argument, the defendant cites to *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978), where the defendants had failed to promptly diagnose and treat a patient's heart attack, and the patient later died. The Supreme Court concluded that a causal connection between the defendants' delay in diagnosing and treating the patient and his resulting death was not easily determined to a reasonable degree of medical certainty. *Id.* at 267, 392 A.2d at 1286. Alternatively, the Supreme Court decided expert witnesses could provide that, to a reasonable degree of medical certainty, the defendants' negligence had increased the risk of harm. *Id.* The Supreme Court adopted this relaxed standard of certainty in such cases to provide a premise upon which a jury may find causation. *Id.* Specifically, the Supreme Court stated,

"Such cases by their very nature elude the degree of certainty one would prefer and upon which the law normally insists before a person may be held liable. Nevertheless, in order that an actor is not completely insulated because of uncertainties as to the consequences of his negligent conduct, section 323(a) [of the Restatement (Second) of Torts] tacitly acknowledges this difficulty and permits the issue to go to the jury upon a less than normal threshold of proof." *Id.* at 271, 392 A.2d at 1287-88. (footnote omitted)

Furthermore, the Supreme Court in *Jones v. Montefiore Hospital,* 494 Pa. 410, 417, 431 A.2d 920, 924 (1981),

stated that where plaintiff's expert demonstrates that the defendant's failure to diagnose and treat an existing condition has increased the risk of harm, the question of whether that conduct caused the plaintiff's ultimate injury requires a jury determination. The jury, not the medical expert, has the task of balancing the probabilities and deciding whether the defendant's negligence was a substantial factor in bringing about the harm. See *Hamil, supra* at 269, 392 A.2d at 1286; *Gradel v. Inouye,* 491 Pa. 534, 544, 421 A.2d 674, 678 (1980).

Through the testimony of Dr. Joseph Harryhill, plaintiffs demonstrated that the defendant's negligent acts or omissions increased the risk of harm to Mrs. Glover-Peters. That evidence provided a basis for the jury to further determine whether such increased risk was a substantial factor in bringing about the harm and the interrogatories posed in the verdict slip provided the jury with the task of examining the question of causation. Dr. Harryhill, the expert physician, testified that the defendant's departure from the standard of care could have caused the harm and thus, it became a function of the jury to decide if it actually did.

Although the verdict slip combined two questions of law in a single question, this court thoroughly and completely instructed the jury on the law with regard to what the plaintiffs needed to prove in order to prevail in this action. In fact, although the issue of causation need only be addressed once by the presiding judge in order to constitute effective instruction, this court was particularly comprehensive, and stressed caution on at least four separate occasions throughout the jury instructions. (N.T. 526-32.)

An error in a jury instruction is sufficient grounds for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. *Boutte v. Seitchik,* 719 A.2d 319, 324 (Pa. Super. 1998). Not all errors in a charge require a new trial, however. "A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission which amounts to fundamental error." *Id.* at 324-25.

This court's jury instruction thoroughly discussed the need for the plaintiffs to prove causation, with such requirement being mentioned numerous times throughout the jury instructions. Specifically, this court instructed the jury that: "in a medical malpractice action, the plaintiff has the burden of proving, by expert testimony, the prevailing standard of medical care accepted by the medical profession, that the care provided by the defendant deviated from the prevailing standards of medical care, and the conduct of the physician caused injury to the plaintiff." (N.T. at 526.)

Additionally, this court reviewed the element of causation with the jury and used the standard instruction highlighting that the jury must determine from the evidence whether there was a causal connection between the negligent conduct of the defendant and the plaintiff's injuries. (N.T. at 530.) The jury was instructed to review the evidence to determine if the defendant's failure to provide reasonable care increased the risk of those injuries. *Id.* Further, since the law recognizes that this connection is rarely demonstrated with absolute certainty, this court emphasized that the jury must look at whether

the defendant's conduct was a substantial factor in bringing about the injuries in question. *Id.*

In summary, on the element of causation required to be proved by the plaintiffs, this court elaborated as follows:

"But you need to decide, number 1, is the defendant or was the defendant negligent? Yes or no. If you decide that the defendant was negligent, then and only then do you discuss the issue of well, was his negligence a substantial factor in bringing about the harm. If you decide that the defendant's negligence was a substantial factor in bringing about the harm, then and only then do you get to the next thing we are going to talk about and that is damages.

"So you must find negligence, you must find substantial factor, and if you find both of those, you go to damages. If you do not find both of those, if you find neither of those or only one or the other, you don't get to damages and the case is over. You must find both negligence plus substantial factor to go to damages. If you do find negligence and substantial factor, then we are in the damages category." (N.T. at 532.)

These instructions were thorough and there is nothing to suggest that the jury deliberations were conducted in a confused manner. During the three hours the jury deliberated, no questions were posed by the jury. There is no indication that the jury was unaware of its obligation to find that Dr. Prudencio's conduct had to bear a reasonable relationship, *i.e.,* substantial factor, to the injuries sustained by the plaintiff. Therefore, this court finds no merit to the defendant's argument that the verdict slip

was improper because the questions posed gave the jury the task of determining whether there was causation based on the evidence, the court's instructions to the jury were comprehensive, and there was no indication of jury bewilderment.

## Admissibility of Expert Witnesses

Turning to the defendant's third and fourth contentions, the defendant argues that the court improperly precluded the expert testimony of Dr. Paul H. Douglass and erred in permitting plaintiff's expert, Dr. Joseph Harryhill to testify because he was untimely identified. A trial judge has broad powers concerning the conduct of a trial, particularly with regard to the admission or exclusion of evidence. *Santarlis v. Leaseway Motorcar Transport Co.,* 456 Pa. Super. 34, 40, 689 A.2d 311, 313 (1997). The admissibility of evidence, including expert testimony, is a matter entrusted to the sound discretion of the trial court, and such ruling will not be disturbed on appeal unless an abuse of discretion is shown. *Chicchi v. SEPTA,* 727 A.2d 604, 607 (Pa. Commw. 1999).

This court granted plaintiffs' motion to preclude the testimony of Dr. Douglass based both on his late identification as well as the cumulative nature of his intended testimony when coupled with that expected to be offered by the other defense expert, Dr. David Raezer. This court denied defendant's motion to preclude the testimony of Dr. Harryhill because there was no surprise or prejudice to defendant. Initially, Dr. Malcolm Schwartz, urologist, was scheduled to offer expert testimony at trial but he was scheduled to be out of the country during the week of trial. Dr. Harryhill assumed the role to provide expert

testimony about plaintiff's condition. Defendant was aware that Dr. Harryhill was plaintiff's treating urologist, and expert reports had been furnished to the defendant in December 1999. This court rejects the argument that Dr. Harryhill was untimely identified because the defendant was well aware Dr. Harryhill was plaintiff's current treating physician, having received the expert reports, and defendant had ample time to research any necessary information.

### Admissions Made by Plaintiff in a Previous Action

Defendant next argues that he is entitled to a new trial because this court precluded reference to averments made by plaintiff in connection with her action against Dr. Bakare, the gynecologist, who caused the surgical tear in her bladder. According to Dr. Prudencio, these averments should have been admissible as judicial or evidentiary admissions. A judicial admission is admissible as a hearsay exception and functions as an express waiver made in court or prior to trial by a party or party's attorney, conceding the truth of the admission for the purposes of trial. *Linefsky v. Redevelopment Authority,* 698 A.2d 128, 133 (Pa. Commw. 1997). "A party may not offer evidence to contradict judicially admitted facts." *Id.* "[H]owever, facts judicially admitted in one proceeding are not conclusive in another, though they still may be admitted as evidential admissions." *Id.*

It is well settled that questions concerning the admission or exclusion of evidence are within the sole discretion of the trial court, and decisions in this regard will not be disturbed absent an abuse of discretion. *Valentine v. Acme Markets Inc.,* 455 Pa. Super. 256, 261, 687 A.2d

1157, 1160 (1997). Generally, a trial judge should admit all relevant evidence, unless a specific rule bars its admission. *Id.,* see also, Pa.R.E. 402. Evidence is relevant if it has a tendency to make the existence of a fact more or less probable than it would without the evidence. Pa.R.E. 401. Relevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Pa.R.E. 403.

Defendant was permitted to discuss gynecologist Dr. Bakare's surgery, the resulting complications, and the defense expert's suggestion that the incontinence was caused by Dr. Bakare's surgery. However, no fact at issue in the instant case would be made more or less probable because Cindy Glover-Peters brought suit against Dr. Bakare, alleging negligent conduct. The plaintiff's observations and beliefs do not make more or less probable the issue of Dr. Prudencio's negligence, or the injuries caused by the negligence. If her observations were probative, she could have presented her case without expert testimony. Even if this court had found that admissions from the prior proceeding were relevant, this court would have precluded such evidence because the probative value would be outweighed by the danger of unfair prejudice that may have confused the jury. Unfair prejudice means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially. *Whistler Sportswear Inc. v. Rullo,* 289 Pa. Super. 230, 243, 433 A.2d 40, 45 (1981). Today, with the abundance of media attention focused on the prevalence of frivolous lawsuits, the plaintiffs may well have been prejudiced in the eyes

of the jury for bringing an action not only against, Dr. Prudencio, but also against another health care provider, Dr. Bakare. Moreover, the jury may have speculated that the plaintiffs were attempting to recover damages from both defendants, which would be cumulative in nature.

As for the confusion, if the jury were permitted to know that plaintiffs had instituted a suit against Dr. Bakare, they would then be inclined to speculate on how Dr. Bakare's conduct fit into the equation they were asked to solve. In other words, the jury may speculate as to what became of the suit: was it settled (suggesting that the plaintiffs have already recovered economically for their injuries), or, was it dismissed (suggesting that plaintiffs having filed one meritless lawsuit are pursuing another). Further, if the other suit was still pending, the jury may wonder how that fact should affect their deliberations in the instant matter. Accordingly, this court's decision to preclude the admissions was well within its discretion.

## Admission of Rebuttal Evidence

The defendant next argues that this court improperly ruled when it permitted plaintiffs to present rebuttal testimony from Dr. R. Scott Owens. Rebuttal evidence is a matter within the sound discretion of the trial court. *Ratti v. Wheeling Pittsburgh Steel Corp.,* 758 A.2d 695, 708 (Pa. Super. 2000). Some rebuttal evidence may be offered as a matter of right, while other rebuttal evidence, even that evidence which should have been given in a case in chief, can be admitted within the discretion of the trial court provided the action of the court is not arbitrary or capricious. *Mitchell v. Gravely International Inc.,*

698 A.2d 618, 621 (Pa. Super. 1997); *Potochnik v. Pittsburgh Railways Co.,* 379 Pa. 154, 108 A.2d 733 (1954).

In the instant matter, this court allowed the testimony because it directly contradicted a statement made by the defendant's witness. This court was well within its discretion to admit the testimony and this action by the court was in no way arbitrary or capricious.

### Hearsay Statements

Dr. Prudencio next argues that the trial court erred in permitting plaintiff to testify that her treating physicians, Drs. Owens and Harryhill, diagnosed a vesico-vaginal fistula. Defendant argues that these statements are hearsay and do not fall within any exception to the hearsay rule. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Pa.R.E. 801(c). Statements that are not being offered to prove the truth of the matter asserted are not hearsay, and therefore, are admissible. Not all hearsay admissions are harmful to the opposing party. The Superior Court in *Shahan v. Tomchik,* 429 Pa. Super. 91, 101, 631 A.2d 1298, 1304 (1993) stated that if a party has a full and fair opportunity to cross-examine the person to whom a hearsay statement is attributed, admission of that statement is harmless.

Dr. Harryhill testified at length during the trial, and thus was fully available to the defendant for cross-examination, therefore, plaintiff's testimony was harmless. Any alleged admission of hearsay by Dr. Owens was also harmless. The statements attributable to Dr. Owens were cumulative of statements made by both experts in the

case. Further, plaintiffs state in their brief that these statements were not hearsay because they were not offered to prove the truth of the matter asserted but were offered to show their effect on the listener, Mrs. Glover-Peters. (Plaintiffs' brief, p. 28.) This court finds no harm was suffered by the admission of plaintiff's testimony regarding these statements, defendant suffered no prejudice and is not entitled to a new trial on this issue.

## Expert's Testimony for Purposes of Illustration

The defendant next argues that this court erred in allowing plaintiffs' medical expert, Dr. Harryhill, to testify for purposes of illustration, about treatment he provided to one of his patients. Under Rule 703 of the Pennsylvania Rules of Evidence, an expert may base his opinion upon facts or data of a type reasonably relied upon by experts in the particular field. Pa.R.E. 703. This court agrees with the plaintiffs that the doctor's personal experience treating patients can be relied upon in forming an opinion, particularly when the explanation is used to aid the jury's understanding. This court finds no merit to defendant's argument.

## Jury Instructions

Next, the defendant claims that the trial court erred in failing to charge the jury with certain jury instructions. A trial court has wide latitude in formulating its charge so long as it clearly and adequately covers the law pertaining to the issues raised by the evidence. *Havasy v. Resnick*, 415 Pa. Super. 480, 487, 609 A.2d 1326, 1329 (1992). A primary duty of the trial judge is to clarify the issues and apprise the jury of the legal principles needed to decide the case. *Id.*

In the instant matter, defendant contends that the jury instructions should have contained more specific charges concerning negligence and due care. Specifically, a charge that a physician may not be found liable where symptoms are obscure or such that a skilled practitioner, even after using his or her best judgment, might be mistaken, is simply a more specific way of stating the law concerning the duty of care of the physician. Numerous appellate cases address and reject the requirement of a specific charge, instead allowing a general instruction. See generally, *Smith v. Brooks,* 394 Pa. Super. 327, 575 A.2d 926 (1990); *Butler v. Kiwi S.A.,* 412 Pa. Super 591, 604 A.2d 270 (1992); *Harkins v. Calumet Realty Co.,* 418 Pa. Super. 405, 614 A.2d 699 (1992).

Additionally, defendant argued that the trial court erred in failing to charge the jury that the law recognizes that physicians must be permitted to exercise their medical judgment. This court did address this with the jury as follows:

"Ladies and gentleman, if a patient should sustain an injury or harm while undergoing medical care and that injury or harm results from the physician's lack of knowledge or ability or from his failure to exercise reasonable care, then the physician is responsible for the injuries which are the results of his acts. *If, on the other hand, the physician has used his best judgment and exercised reasonable care, and has a requisite knowledge or ability even though complications resulted, then the physician is not responsible.*" (N.T. at 528.) (emphasis added)

Furthermore, this court instructed the jury,

"The law does not require perfection, prophetic insight and infallible judgment. The law does not require

perfection or near perfection because no human being can possibly meet this standard. The law only requires that a physician possess a reasonable, average ability to carry out professional work and exercise reasonable care, skill and judgment in doing so." (N.T. at 529.)

Because the substance of the requested instruction was adequately covered in the charge given, the requested instruction was properly refused and a new trial is not warranted.

### Excessiveness of the Verdict

Defendant's final argument is that he is entitled to a new trial, or remittitur, because the jury's verdict was "excessive." In order to determine whether a verdict is "excessive," the Superior Court has identified several guidelines, including the following: (1) the severity of the injury, (2) whether plaintiff's injuries were manifested by objective physical evidence instead of merely the subjective testimony of the plaintiff, (3) whether the injury will affect the plaintiff permanently, (4) whether the plaintiff can continue with his employment, (5) the size of the plaintiff's out of pocket expenses, and (6) the amount plaintiff demanded in the original complaint. *Kemp v. Philadelphia Transportation Company,* 239 Pa. Super. 379, 385-86, 361 A.2d 362, 364 (1976). A remittitur by definition, is "the procedural process by which an excessive verdict of the jury is reduced." Black's Law Dictionary, 897 (6th ed. 1983).

This court is not persuaded that defendant has set forth any rational basis that the verdict of $250,000 was inappropriate and denies the motion for a new trial and re-

mittitur. There was sufficient testimony that the plaintiff, due to the negligence of Dr. Prudencio, was forced to undergo numerous diagnostic procedures, which are often painful and embarrassing. There is no dispute that Mrs. Glover-Peters has been rendered incontinent at the age of 36. At trial, Mrs. Glover-Peters described that her incontinence forces her to wear diapers at all times, with diaper changes occurring eight to ten times daily. (N.T. at 70.)

In addition to being diaper dependent, having painful irritation in the vaginal area as a consequence of the constant wetness, expending funds to buy sanitary products, incurring medical expense for numerous diagnostic procedures, plaintiff anticipates corrective surgery which will cost in the neighborhood of $20,000 to $30,000, followed by 4-6 weeks of disability from employment. The court rejects the defendant's argument that it should consider the severity of her problem is lessened because she has continued to work. Plaintiff testified that she had to work, she has three children to support, and "she had no other choice." (N.T. at 84.) Plaintiff also testified that her co-workers have had to assist her with her duties because she must take frequent bathroom breaks to change diapers, or clothes, if necessary. (N.T. at 73.)

Further, defendant's expert, Dr. Raezer told the jury that people who suffer from total urinary incontinence are "crazed maniacs." Specifically, he elaborated: "When you have total urinary incontinence, whether it be due to intrinsic sphincter deficiency, whether it is due to radical prostatectomy, whether it be due to—men can get crazed too. When you leak all of your urine, all your urine out through a hole in the bucket, so to speak, or a

bad valve, it is a terrible situation." (N.T. at 469.) Undeniably, the evidence established at trial that total urinary incontinence is one of the most distressing and disabling conditions seen by urologists in clinical practice.

Accordingly, the following is entered:

## ORDER

And now, September 27, 2001, it is hereby ordered that the defendant's motion for post-trial relief is denied.