Carolyn BOUTTE, Appellee,

v.

Murray SEITCHIK, M.D., Dr. Thomas Gain, Hahnemann Hospital, and Mentor Corporation.

Appeal of Murray SEITCHIK, M.D.

Superior Court of Pennsylvania.

Argued July 14, 1998.

Filed Sept. 11, 1998.

Reargument Denied Nov. 10, 1998.

---

Robert G. Yosua, Blue Bell, for appellant.

Neil E. Jokelson, Philadelphia, for Carolyn Boutte, appellee.

Before KELLY and JOYCE, JJ., and CERCONE, President Judge Emeritus.

JOYCE, Judge:

This is an appeal from the final judgment entered against Appellant, Dr. Murray Seitchik, in the tort action for lack of informed consent brought by Appellee, Carolyn Boutte.[1] For the reasons set forth below, we affirm. Before addressing the merits of Appellant's claims, we will recount the pertinent facts giving rise to this appeal.

Appellee suffered from chronic and severe mastodynia for which she received conservative treatment. Unable to obtain relief, Appellee consulted Dr. Thomas Gain, who recommended a bilateral mastectomy followed by reconstructive surgery to alleviate the pain. Dr. Gain referred Appellee to Appellant, Dr. Seitchik, who was to perform the reconstructive surgery. After consulting with these physicians, Appellee agreed to have the surgery performed as she believed that the reconstruction would enable her to have a normal appearance.

Surgery was scheduled for February 17, 1988. Just prior to surgery, an associate of Dr. Gain's presented Appellee with a consent form indicating that she authorized Dr. Gain and or his associates to perform a bilateral subcutaneous mastectomy with implants. The form further identified the risks of surgery as anesthesia, bleeding and infection.

Dr. Gain performed the mastectomy. Immediately thereafter, Dr. Seitchik performed the reconstructive surgery during which he implanted prostheses manufactured by Mentor Corporation (Mentor).[2] Following the

---

**1.** In his notice of appeal, Appellant asserts that this appeal is from the order denying his post-verdict motions. Appellant is in error as such orders are interlocutory and unappealable. Note, Pa.R.A.P., Rule 301, 42 Pa.C.S.A. Rather, the appeal lies from the entry of the final judgment. *Johnston the Florist, Inc. v. TEDCO Construction Corp.*, 441 Pa.Super. 281, 286–288, 657 A.2d 511, 514 (1995) (*en banc*). Because the verdict has been reduced to judgment, we have jurisdiction to entertain this appeal.

**2.** Mentor was subsequently dismissed from the suit by stipulation of the parties.

surgery, Appellee received a product information that identified certain risks of surgery which included, *inter alia,* the risk of capsular contracture, infection, calcification, intolerance and the risk that the implants would leak, rupture or bleed. Unfortunately, Appellee continued to experience pain following the surgery.[3]

In June of 1990, Appellee commenced suit against Dr. Gain, Mentor, Hahnemann Hospital and Appellant. *See Boutte v. Seitchik,* docketed at June Term, 1990, No. 6387. The action against Appellant was dismissed without prejudice. As a result, Appellee commenced a new action, docketed at April Term, 1991, No. 352 against Appellant. These actions were later consolidated for trial.

Because Appellee failed to comply with the defendants' discovery requests, she was precluded from presenting expert testimony at trial. All of the defendants filed a motion for summary judgment. Dr. Gain's and Hahnemann's motions were granted; Dr. Seitchik's motion was denied. A jury trial was held in June of 1996, following which the jury awarded Appellee the sum of $750,000.00 in damages.[4] Appellant timely filed post-verdict motions which were denied by the trial court. Appellee moved for the imposition of delay damages. The trial court granted Appellee's motion and molded the verdict to include $232,942.00 in delay damages. The verdict was thereafter reduced to judgment. Appellant appealed[5] and presents the following issues for review: (1) whether the trial court erred in refusing to grant judgment notwithstanding the verdict; (2) whether the trial court erred in instructing the jury that Appellant is liable for scarring resulting from the mastectomy; and (3) whether the verdict is against the weight of the evidence.

 Appellant initially challenges the trial court's refusal to enter judgment *non obstante veredicto* (judgment n.o.v.).[6]

In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further a judge's appraisement of evidence is not to be based on how he would have voted had be been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations.

There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

---

3. Appellee subsequently had the implants removed by another physician, Dr. Bar, in March of 1991.

4. Appellee proceeded to trial only on her cause of action for lack of informed consent.

5. Although Appellant prematurely filed his notice of appeal prior to the entry of judgment, the appeal will be treated as having been filed on the date on which judgment was entered upon the docket. *See* Pa.R.A.P., Rule 905(a), 42 Pa.C.S.A. (a notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof).

6. In conjunction with this claim, Appellant asserts that he is entitled to a new trial based on the alleged insufficiency of the evidence. Appellant's Brief at 34–35. Appellant is in error. Where the evidence is insufficient to sustain the verdict or decision of the trial court, the remedy granted in civil cases is a judgment notwithstanding the verdict. *Lilley v. Johns–Manville Corp.,* 408 Pa.Super. 83, 89–91, 596 A.2d 203, 206 (1991), *appeal denied,* 530 Pa. 644, 607 A.2d 254 (1992). We will thus address Appellant's sufficiency of the evidence claim in the context of his motion for judgment n.o.v.

*Moure v. Raeuchle,* 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992). *Accord Nogowski v. Alemo–Hammad,* 456 Pa.Super. 750, 758–764, 691 A.2d 950, 955–957 (1997) (*en banc*), *appeal denied,* 550 Pa. 684, 704 A.2d 638 (1997). In making the determination of whether judgment notwithstanding the verdict is appropriate, our scope of review is plenary as it is with any review of questions of law. *Davis v. Berwind Corp.,* 547 Pa. 260, 266, 690 A.2d 186, 189 (1997).

Appellant contends that judgment n.o.v. was proper because Appellee failed to present sufficient expert testimony: (1) as to the probability of the risks involved; (2) that the risks actually occurred; and (3) that her injuries were caused by the reconstructive surgery. As these allegations are related, they will be addressed together. With respect to these matters, our Supreme Court has observed:

> Where a patient is mentally and physically able to consult about his condition, in the absence of an emergency, the consent of the patient is a prerequisite to a surgical operation by his physician and an operation without the patient's consent is a technical assault[....] [T]he burden is on [the] plaintiff to prove that the operation performed, or substantially that operation, was not authorized by him ....

> Since the agreement between the physician and his patient is contractual in nature, for there to be a valid consent it must be clear that both parties understand the nature of the undertaking and what the possible as well as expected results might be. It will be no defense for a surgeon to prove that the patient had given his consent, if the consent was not given with a true understanding of the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results. ... A physician or surgeon need not disclose all known information; however, the physician or surgeon is required to advise the patient of those material facts, risks, complications and alternatives to surgery that a reasonable person would consider significant in deciding whether to have the operation.

*Gouse v. Cassel,* 532 Pa. 197, 202–203, 615 A.2d 331, 333–334 (1992) (citations, quotation marks and emphasis omitted).

In order for the jury or fact-finder to determine the materiality of a risk, the plaintiff must supply expert information as to the nature of the harm attendant to the procedure and the probability of that harm occurring. *Moure,* 529 Pa. at 405, 604 A.2d at 1008; *Nogowski,* 456 Pa.Super. at 762–764, 691 A.2d at 957. However, a plaintiff need not prove that a causal relationship exists between the physician's or surgeon's failure to disclose information and the patient's consent to undergo surgery. *Gouse,* 532 Pa. at 202, 615 A.2d at 333. This Court has also recognized that a plaintiff need not prove by expert testimony that the surgery caused an injury. *Rowinsky v. Sperling,* 452 Pa.Super. 215, 223–225, 681 A.2d 785, 790 (1996), *appeal denied,* 547 Pa. 738, 690 A.2d 237 (1997). Recovery on the theory of informed consent is permitted regardless of causation because it is the conduct of the unauthorized procedure that constitutes the tort. *Moure,* 529 Pa. at 405, 604 A.2d at 1008. We shall evaluate Appellant's arguments and the decision of the trial court with the above principles in mind.

At trial, Appellee relied upon the expert testimony of Appellant, whom she called as on cross-examination. Appellant testified that all of the information contained on the product form supplied by Mentor was relevant and important for the patient to know in order to provide informed consent. N.T. 6/4/96 at 103. The risks identified on the form were capsular contracture, leakage, rupture, gel bleed and other, which included intolerance to the implant, infection, calcification and the formation of minor ridges or creases. *Id.* at 108–111. However, Appellant qualified his statement by noting that capsular contracture, leakage and rupture constituted the "important information" which Appellee needed to know. *Id.* at 101. He further indicated that the gel bleed and calcification either were not a medically significant event or were unlikely to occur, such that Appellee did not need to be apprised of these risks. *Id.* at 165–166 and 184–186. Appellant further testified that scarring

would inevitably result from the mastectomy. *Id.* at 80, 83–84, 140 and 148.

Appellant's testimony unequivocally demonstrates that the above risks constituted "important information" which the patient should be given in order to make an informed choice regarding the implants. This testimony, in essence, conceded that at least three of the risks were material to Appellee's decision to undergo the reconstructive surgery. Under these circumstances, it was unnecessary for Appellee to present more detailed evidence quantifying the probability of the occurrence of the risks.

Regarding Appellant's assertion that expert testimony was needed to establish a causal connection between the injury and the tortious conduct, this Court has rejected this approach. *Rowinsky, supra.* To the extent *Rowinsky* may be viewed as an unwarranted extension of the rule expressed in *Gouse, supra,* expert testimony is only required in those cases where the causal connection is not obvious. *Maliszewski v. Rendon,* 374 Pa.Super. 109, 112–114, 542 A.2d 170, 172 (1988), *appeal denied,* 520 Pa. 617, 554 A.2d 510 (1989). The causal connection is obvious here. Appellee testified that she would never have undergone the mastectomy and reconstructive surgery if she would have been advised of the risks and results by Appellant. N.T. 6/5/96 at 255–256, 260, 261–262 and 288.

Moreover, Appellee did present expert testimony that she suffered from one of the material risks. Appellant viewed pictures of Appellee's breasts that were taken prior to the removal of the implants. N.T. 6/4/96 at 79 and 138. Appellant indicated that the photographs depicted an indentation of the right breast that was consistent with capsular contracture. *Id.* at 138–139. As previously discussed, Appellant stated that capsular contracture was one of the material risks that Appellee needed to know in order to decide whether she wanted to undergo the surgery. Appellee further stated that the deformity in appearance attributable to the contracture was one of the reasons that induced her to have the implants removed. N.T. 6/5/96 at 300–301.

Appellant further identified permanent scarring as a risk. N.T. 6/4/96 at 84 and 137.

Despite Appellant's efforts to attribute the external scarring to the mastectomy portion of the surgery, *see id.* at 132 and 139–140, he conceded that some options, particularly those relating to the placement of the nipples, were his decision alone to make depending on the events which developed at the time of surgery, *see* N.T. 6/4/96 at 145–146 and N.T. 6/5/96 at 228–229. Appellant admitted that he did not discuss with Appellee the techniques that would be used in relocating her nipples. *Id.* at 146. Appellant's testimony thus demonstrated that a portion of the external scarring and Appellee's ultimate appearance resulted from or occurred during the reconstructive portion of the surgery. In addition, Appellee stated that she was unaware that her nipples would be disturbed by the surgery, as she thought that the mastectomy and implants would be approached from underneath her breasts such that the scars would be concealed after the prostheses were implanted. N.T. 6/5/96 at 258–260, 286 and 291.

■ The above testimony adequately demonstrated the risks associated with the reconstructive surgery, the materiality of those risks, the fact that Appellee actually suffered from one or more of those risks and that the risks were caused by the surgery. Because the evidence is sufficient to sustain the verdict, Appellant is not entitled to judgment n.o.v., either as a matter of law or on the ground that the evidence was such that no two reasonable minds could disagree. Accordingly, no relief is due on this claim.

■ Appellant next questions the propriety of the trial court's jury charge.

In examining [jury] instructions, our scope of review is to determine whether the trial court committed [a] clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission which

amounts to fundamental error. A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety. *Stewart v. Motts*, 539 Pa. 596, 606, 654 A.2d 535, 540 (1995) (citations omitted).

■ Appellant first complains that the trial court erred in failing to instruct the jury regarding Appellee's burden of presenting expert testimony as to the nature, likelihood and probability of the risks. Review of the trial court's charge demonstrates that the jury was adequately instructed on Appellee's burden of proof. N.T. 6/6/96 at 432–436. To the extent that the instruction requested by Appellant was not reasonably covered therein, this omission did not affect the outcome of the case.

We previously discussed the necessity of expert testimony to establish the materiality of the risks involved and found that Appellee sustained her burden here by virtue of Appellant's testimony conceding that certain information was material and important. Had the jury been instructed on this issue, it would have concluded that Appellee sustained her burden, as evidenced by Appellant's testimony and the jury's ultimate verdict. The omission thus had no effect on the outcome of the case.

■ Appellant also disputes the trial court's instructions concerning Appellant's duty to obtain Appellee's informed consent on the mastectomy and Appellant's liability for damages resulting therefrom. The essence of Appellant's argument is that he should not be held liable for surgery performed by another physician. We agree with Appellant that under normal circumstances, only the physician who performs the operation on the patient has the duty of obtaining the patient's informed consent. *Shaw v. Kirschbaum*, 439 Pa.Super. 24, 29–31, 653 A.2d 12, 15 (1994), *appeal denied,* 541 Pa. 652, 664 A.2d 542 (1995); *Foflygen v. Zemel*, 420 Pa.Super. 18, 33–35, 615 A.2d 1345, 1353 (1992), *appeal denied,* 535 Pa. 619, 629 A.2d

1380 (1993). We are not persuaded that the particular facts of this case fall within the ambit of this rule.

■ Appellant seeks to divorce the mastectomy from the reconstructive surgery. However, the facts presented at trial indicate that, at least from the perspective of Appellee, the procedures were inextricably intertwined. Appellee's testimony made it absolutely clear that she desired a normal appearance and would not have undergone the mastectomy absent the reconstruction.

Moreover, Appellant is a plastic surgeon who was in charge of the reconstructive portion of the surgery. As such, he was responsible for the final result of the procedures and it was incumbent on him to explain these matters to Appellee. Appellant was well aware of his role as evinced by his testimony in which he stated that he addressed the "esthetic limitations" of the reconstructive surgery and indicated that he explained these matters to Appellee. N.T. 6/4/96 at 66, 79, 137–140 and 147–148.

Appellant also conceded in his pleadings that he and Dr. Gain shared the responsibility for obtaining Appellee's informed consent. N.T. 6/5/96 at 317. Appellant further testified that he relied upon the consent form that was presented to Appellee by Dr. Gain's associate as authorization for the procedure. N.T. 6/4/96 at 158–159. Given all of the above evidence, it is apparent that the parties regarded the mastectomy and reconstruction as a single event for surgical purposes.

In light of these circumstances, we are not persuaded that the trial court erred in imposing a duty upon Appellant to obtain Appellee's informed consent with respect to all aspects of the procedure including the mastectomy. *See, e.g., Grabowski v. Quigley*, 454 Pa.Super. 27, 40–42, 684 A.2d 610, 617 (1996), *appeal granted,* 548 Pa. 670, 698 A.2d 594 (1997) (physician who authorized another physician to commence surgery on an anesthetized patient could be found liable for battery so as to defeat motion for summary judgment); *Foflygen,* 420 Pa.Super. at 31–33, 615 A.2d at 1352 (joint tortfeasors are parties who act together in committing a wrong or

whose acts, if independent of each other unite to cause a single injury; a joint tort occurs where two or more persons owe the same duty to the plaintiff and by their common negligence, the plaintiff is injured). For similar reasons, the trial court did not err in instructing the jury that Appellant was liable for the damages arising out of both procedures.

Appellant further appears to complain of the fact that damages were awarded for the development of fibroids. Appellant's Brief at 26–29. Review of the jury charge discloses that fibroids were not among the risks identified by the trial court in the jury instructions. N.T. 6/6/96 at 436–437. Because the jury was not directed to award damages for this item, we find this claim to be wholly lacking in merit.

Appellant's final allegation of error relates to the grant of a new trial on the ground that the verdict is contrary to the weight of the evidence.[7] We note that this issue is not identified in the Statement of Questions Involved in Appellant's brief. *See* Appellant's Brief at 1. Ordinarily, issues that are not set forth in the statement of questions presented or reasonably suggested thereby are deemed waived. Pa.R.A.P., Rule 2116(a), 42 Pa. C.S.A.; *Dickler v. Shearson Lehman Hutton, Inc.*, 408 Pa.Super. 286, 290, 596 A.2d 860, 862 n. 1 (1991), *appeal denied*, 532 Pa. 663, 616 A.2d 984 (1992). Even if we were to overlook this defect, Appellant would not be entitled to any relief.

 It is well settled that the grant of a new trial is a matter within the discretion of the trial court. *Martin v. Evans*, 551 Pa. 496, ——, 711 A.2d 458, 461 (1998). We must review a denial of a motion for a new trial in the same manner as a decision to grant a new trial. *Thompson v. City of Philadelphia*, 507 Pa. 592, 599, 493 A.2d 669, 673 (1985). Because an appellate court, by its nature, stands on a different plane than a trial court, we are not empowered to merely substitute our opinion concerning the weight of the evidence for that of the trial judge. *Id.*, 507 Pa. at 599, 493 A.2d at 672–673.

Instead, the focus of appellate review is on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict. *Id.*, 507 Pa. at 599, 493 A.2d at 673. A new trial is warranted where the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Martin*, 551 Pa. at ——, 711 A.2d at 461. However, a new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion. *Id.*

 In support of his weight of the evidence claim, Appellant reiterates his prior arguments pertaining to the sufficiency of the evidence and asserts that Appellee's testimony was incredible. The jury, acting within its prerogative as the sole finder-of-fact, evidently accepted Appellee's testimony as credible. As a reviewing court, we may not disturb the jury's finding in this regard. We have previously considered and rejected Appellant's challenge to the sufficiency of the evidence. Having reviewed the certified record, we find nothing therein which persuades us that the jury's verdict is so contrary to the weight of the evidence as to shock the conscience and make the award of a new trial imperative. Accordingly, the trial court did not abuse its discretion by refusing to grant Appellant a new trial. As none of Appellant's claims warrants the grant of any relief, we affirm the judgment.

Judgment affirmed.

---

7. Appellant has improperly commingled this claim in the argument pertaining to his other issues, *see* Appellant's Brief at 34–35 and 46–48, in violation of Pa.R.A.P., Rule 2119(a), 42 Pa. C.S.A.