Timothy ZEFFIRO, Appellee,

v.

J. Michael GILLEN and John G. Gillen and J.M. Gillen Co., LLC, Jointly and Individually.

Appeal of J. Michael Gillen.

Superior Court of Pennsylvania.

Argued Oct. 2, 2001.
Filed Nov. 28, 2001.

---

Janette D. Simmons, Pittsburgh, for appellants.

Lawrence E. Bolind, Imperial, for appellee.

BEFORE: DEL SOLE, President Judge, LALLY–GREEN and TAMILIA, JJ.

DEL SOLE, President Judge:

¶ 1 J. Michael Gillen ("Gillen") appeals from the judgment entered in favor of Appellee, Timothy Zeffiro ("Zeffiro"), in an action brought by Zeffiro for the payment of commissions. We affirm.

¶ 2 The Gillen company is a manufacturer, agent and distributor that sells raw materials to paint manufacturers, as well as particular compounds for related industries. The Gillen company also served as an agent for Van Horn, Metz & Co. ("Van Horn Metz"), a manufacturer of similar industrial products. Van Horn Metz paid a commission to the Gillen company for products it sold on behalf of Van Horn Metz.

¶ 3 Zeffiro was employed by Gillen from 1981 until 1998. In January of 1981, the parties first entered into a contract for Zeffiro's employment.[1] The agreement outlines the procedures to be followed for payment of commissions to Zeffiro. This agreement included a sentence that provided: "If T.C. Zeffiro leaves J.M. Gillen Co., his commission will be based on the above and not on sales made." Subsequently the parties entered into new employment contracts. Subsequent contracts were dated March 19, 1984, and February 2, 1985. Neither of these contracts included the separation language included in the 1982 contract.

¶ 4 In March of 1998, Zeffiro tendered his resignation to Gillen. The parties reached an agreement on all issues needing to be reconciled between them with the exception of Zeffiro's bonus commission on Van Horn sales for 1997. Zeffiro sought payment of the 1997 special commission paid by Van Horn Metz, but Gillen refused. Zeffiro tendered payment of reimbursement costs per the reconciliation.

¶ 5 Zeffiro filed suit, alleging claims for "unpaid commissions" under the Pennsylvania Wage Payment and Collection Law,[2] and common law breach of contract. The suit initially named as defendants J. Michael Gillen, John G. Gillen and the J.M. Gillen Co., LLC. The matter proceeded to a non-jury trial. At the trial, counsel for Gillen presented a motion in *limine*, seeking an order limiting the trial to the breach of contract claim. The trial court granted the motion and dismissed the claims relating to the Wage Payment and Collection Law. During trial, upon stipulation of Zeffiro's counsel, the trial court dismissed defendants John G. Gillen and

---

**1.** As the trial court noted, while Gillen's exhibit, the employment contract for this period, bears the date January 25, 1982, testimony at the nonjury trial placed the original contract date at January 1981. This discrepancy is immaterial to our ruling.

**2.** 43 P.S. § 260.1, et seq.

the J.M. Gillen Co. LLC from the action. The only remaining claim was the breach of contract claim against J. Michael Gillen. After trial, the trial court entered judgment against Gillen in the amount of $5,024.18 plus interest from June 1, 1998.

▮▮▮▮ ¶ 6 Gillen filed a motion for post-trial relief requesting a new trial or an order modifying the verdict and entering judgment in favor of Gillen. The trial court denied the post-trial motion. Gillen filed a notice of appeal. Gillen was ordered to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Gillen filed the necessary statement. Judgment was subsequently entered.[3]

¶ 7 On appeal, Gillen presents the following issues for our review:

I. Whether the verdict of the Honorable Trial Judge in favor of Zeffiro is against the weight and sufficiency of the evidence, because Zeffiro failed to demonstrate any contractual right or agreement entitling him to the Van Horn Metz incentive bonus?

II. Whether the verdict of the Honorable Trial Judge in favor of Zeffiro is against the weight and sufficiency of the evidence, because Zeffiro failed to demonstrate any contract or agreement entitling him to monies received by the Gillen Company after March 31, 1998?

III. Whether the verdict of the Honorable Trial Judge in favor of Zeffiro is against the weight and sufficiency of the evidence, because the evidence shows that Zeffiro was aware that he was not entitled to commissions or monies collected and received by the Gillen Company after his departure?

IV. Whether the Honorable Trial Judge abused his discretion and/or committed an error of law when he denied J. Michael Gillen's counsel the opportunity to explore Zeffiro's knowledge and awareness of Van Horn Metz's decision to terminate its agency relationship with the Gillen Company in March 1998?

V. Whether the Honorable Trial Judge abused his discretion and/or committed an error of law when he denied J. Michael Gillen's counsel the opportunity to present evidence that the Gillen Company followed a pattern and practice whereby "bonuses" were only paid if the employee or contractor was still associated with the Gillen Company at the time the "bonus" was paid.

Appellant's Brief, at 4.

▮▮▮▮ ¶ 8 Appellant claims in his first three issues that the verdict of the trial court was against the weight and sufficiency of the evidence. Although Appellant blurs them, these claims involve two distinct standards of review. Because an appellate court, by its nature, stands on a different plane than a trial court, we are not empowered to merely substitute our opinion concerning the weight of the evidence for that of the trial judge. *Boutte v. Seitchik*, 719 A.2d 319, 326 (Pa.Super.1998). Instead, the focus of appellate review is on whether the trial judge has palpably abused his discretion, as opposed to whether the appellate court can find support in the record for the jury's verdict. *Boutte*, 719 A.2d at 326. A new trial is warranted where the jury's verdict is so

---

**3.** In his notice of appeal and in his appellate brief, Appellant asserts that this appeal is from the order denying his post-trial motion. Appellant is in error as such orders are interlocutory and unappealable. Rather, the appeal lies from the entry of the final judgment.

*Johnston the Florist, Inc. v. TEDCO Contr.,* 441 Pa.Super. 281, 657 A.2d 511, 514 (1995). Because the verdict has been reduced to judgment, we have jurisdiction to entertain this appeal.

contrary to the evidence as to shock one's sense of justice. *Id.* When reviewing the sufficiency of the evidence, however, this Court must determine whether the evidence and all reasonable inferences therefrom, viewed in the light most favorable to the verdict winner, was sufficient to enable the factfinder to find against the losing party. *Bannar v. Miller,* 701 A.2d 232, 238 (Pa.Super.1997).

■ ¶ 9 Appellant's first three issues allege that the trial court's verdict is not supported by sufficient evidence and is against the weight of the evidence because Zeffiro was not entitled to the Van Horn Metz commission after he left Gillen's employment. Zeffiro's prorated portion of the Van Horn Metz commission is the only claim at issue in this case.

¶ 10 We first note that the employment contract in effect between the parties at the time that Zeffiro resigned from Gillen does not address the payment of monies or commission to Zeffiro in the event that Zeffiro left Gillen's employment. The first contract entered into by the parties was dated January 25, 1982, and included language addressing the contingency of Zeffiro's leaving Gillen's employment and how commissions would be paid. The relevant language provided: "If T.C. Zeffiro leaves J.M. Gillen Co., his commission will be based on the above and not on sales made." Defendant's Exhibit A. The language "based on the above" makes reference to the policy outlined in the contract providing that commissions are paid to salespeople, such as Zeffiro, only after Gillen received payment from its clients. Defendant's Exhibit A. Subsequent contracts were entered into by the parties, dated March 19, 1984, and February 2, 1985. Neither of these contracts included the language included in the original contract which provided for the terms of payment on the occasion that Zeffiro would leave Gillen's employment. Thus, the superseding contracts do not provide for the terms of payment of monies in the event that Zeffiro would leave Gillen. Thus, there are no express contract terms governing the payment of monies or commissions to Zeffiro upon his leaving Gillen's employment.

¶ 11 Gillen first contends that Zeffiro failed to demonstrate any contractual right to the Van Horn Metz incentive bonus. In support of this contention, Gillen points to the fact that the incentive agreement was between Gillen and Van Horn Metz and does not mention Zeffiro, or Zeffiro's entitlement to the commission.

■ ¶ 12 While it is not disputed that the Incentive Agreement was between Gillen and Van Horn Metz and that the Agreement does not specifically mention Zeffiro, these facts do not conclusively establish that Zeffiro was not entitled to the Van Horn Metz commission. Although the Incentive Agreement does not make clear Zeffiro's entitlement to the commission, the practice of the parties over the course of several years does. In the absence of an express provision to the contrary, custom or usage, once established, is considered a part of a contract and binding on the parties though not mentioned therein. *Resolution Trust Corp. v. Urban Redevelopment Auth.,* 536 Pa. 219, 638 A.2d 972, 976 (1994). Zeffiro testified that there was an agreement between Gillen and Van Horn Metz and that, pursuant to this agreement, Van Horn Metz paid Gillen a commission based on the amount of Van Horn Metz's product that Gillen sold. The commission paid to Gillen was then distributed to the salespeople responsible for those sales on a prorated basis. Zeffiro testified that he had received a prorated portion of the Van Horn Metz commission every year the Agreement was in effect, from its inception in 1984 until the time

that he left Gillen, with the exception of the commission that is at issue in this case.

¶ 13 Barry Fisher, Executive Vice President for Van Horn Metz for ten years and a Van Horn Metz employee prior to that position, also testified regarding the Agreement and commission paid to Gillen. He testified that there was an agreement between the parties, that the commission paid to Gillen was based on the work of the employees at Gillen, and that Gillen employees received a portion of that commission. He testified that he was aware that Zeffiro consistently received a portion of the commission.

¶ 14 J. Michael Gillen, owner of Gillen when Zeffiro was employed there, testified that Zeffiro had in fact been paid a prorated portion of the Van Horn Metz commission in years prior to his leaving Gillen's employment. John Gillen, present owner of Gillen and a Gillen employee while Zeffiro was employed there, also testified that the Van Horn Metz commission was paid to Gillen based on the performance of the Gillen employees and that Zeffiro did receive a portion of that commission prior to his resignation.

¶ 15 Although there is no express contractual provision providing for Zeffiro's entitlement to a share of the Van Horn Metz commission, the practice and policy of the company established Zeffiro's entitlement to a portion of the Van Horn Metz commission. Therefore, Gillen's argument that Zeffiro is not entitled to a portion of the Van Horn Metz agreement because he did not establish any contractual right or agreement entitling him to it fails.

¶ 16 Gillen next argues that Zeffiro failed to demonstrate any contract or agreement entitling him to monies received by Gillen after Zeffiro's effective resignation date, March 31, 1998. It is Gillen's contention that the parties' agreement obligated payment of commission and other monies to Zeffiro only after two conditions were met. First, the monies had to be collected and received by the Gillen Company before any payment could be made to Zeffiro. Second, Zeffiro had to be associated with Gillen at the time the monies were eventually collected and received. Appellant's Brief at 14.

¶ 17 As stated previously, the contract in effect between the parties at the time Zeffiro resigned does not provide for the terms of payment to Zeffiro on the occasion of his leaving Gillen's employment. Accordingly, there is no express agreement controlling the determination of payment of commissions or monies to Zeffiro upon his resignation. Even assuming *arguendo* as true Gillen's argument that one of the conditions precedent to Zeffiro's receipt of the commission was Gillen's receipt of the money, then the money should have been paid to Zeffiro when it was received. These commissions were earned by Zeffiro over the 1997 calendar year. There was testimony from Gillen that it received the commission money from Van Horn on May 4, 1998. The parties were still reconciling monies between them at this point. In fact, Zeffiro did not issue a check for final payment to Gillen for forwarded expenses until May 20, 1998. Moreover, there is no basis for Gillen's claim that Zeffiro had to be affiliated with Gillen when the money was received by Gillen in order to receive it. The commission was earned by Zeffiro in 1997 while he was still employed by Gillen. As Gillen has acknowledged its receipt of payment from Van Horn Metz, the money should be paid to Gillen.

¶ 18 Gillen next argues that the evidence of record proves that Zeffiro was aware that he was not entitled to commissions or monies collected and received by the Gillen Company after his departure. In support of this argument, Gillen points to the facts

that Zeffiro did not bring up the Van Horn Metz bonus during the reconciliation process nor did Zeffiro make any claim for other commissions collected and received by Gillen after March 31, 1998. Appellant's Brief at 16.

¶ 19 It is not clear to this Court what, if any, relevance this argument has to the issues presently before it. Zeffiro is making a claim of entitlement to the Van Horn Metz commission. In fact, that is the single issue in this case. Obviously Zeffiro believes he is entitled to the Van Horn Metz commission. Prior to instituting this suit, Zeffiro sought payment of this commission and Gillen refused. The fact that Zeffiro did not raise the Van Horn Metz bonus during the reconciliation process or that he did not make any claim for other commissions is irrelevant.

¶ 20 In reviewing the record we find that there was sufficient evidence to support the trial court's conclusion that Zeffiro was entitled to the Van Horn Metz commission. We also find that the verdict was not against the weight of the evidence. The trial court did not abuse its discretion and the verdict was not so contrary to the evidence as to shock one's sense of justice. Accordingly, we find Gillen's first three issues on appeal to lack merit.

■ ¶ 21 In his fourth issue, Gillen asserts that the trial court erred and/or abused its discretion in precluding Gillen's counsel from questioning John Gillen about the termination of the relationship between Van Horn Metz and Gillen. Gillen claims that this testimony would have demonstrated the bias of Mr. Fisher and Zeffiro's involvement in Van Horn Metz's decision to cancel their long-standing relationship.

■ ¶ 22 The question of whether evidence is relevant and, therefore, admissible, is a determination that rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion. *Turney Media Fuel, Inc. v. Toll Bros.*, 725 A.2d 836, 839 (Pa.Super.1999). Evidence is relevant if it tends to make a fact at issue more or less probable. *Romeo v. Manuel*, 703 A.2d 530, 532 (Pa.Super.1997).

¶ 23 We agree with the trial court's determination that the testimony sought to be introduced by Gillen was irrelevant to the claim presented by Zeffiro. Van Horn Metz terminated its relationship with Gillen in March of 1998. This termination coincided with Zeffiro's resignation and the end of his career with Gillen. This testimony would be irrelevant to Zeffiro's claim of entitlement to the commission earned over the course of the 1997 calendar year. Moreover, even if Gillen were able to establish that Zeffiro was involved in Van Horn Metz's decision to terminate its relationship with Gillen, such evidence would be irrelevant to proving or disproving that Zeffiro was entitled to the Van Horn Metz commission for 1997. We find no abuse of discretion in the trial court's preclusion of this testimony.

■ ¶ 24 Finally, Gillen contends that the trial court erred in denying Gillen's counsel the opportunity to question John Gillen about another employee named Debbie Mack who previously worked for Gillen. Gillen sought to introduce testimony that Debbie Mack had received a bonus every year she worked for Gillen. However when she left in June of 1998, she had not made any claim for the 1998 year-end bonus. By this testimony, Gillen sought to establish that it was the pattern and practice of Gillen to pay a bonus only if the individual was still associated with the company at the time the bonus was paid. The trial court sustained Zeffiro's counsel's

objection to this questioning and precluded this testimony on the basis of relevancy.

¶ 25 We agree with the trial court's ruling that this testimony was irrelevant to the issue before the court. Ms. Mack worked as the office manager for Gillen before she resigned. This position was entirely different than that occupied by Zeffiro. Ms. Mack did not earn commissions. A year-end bonus paid to an office manager is different than a commission earned by a salesperson in the year preceding his resignation. Evidence of a year-end bonus not being paid to an office manager is irrelevant to proving or disproving that Zeffiro was entitled to commissions he had earned in the year prior to his resignation. Moreover, the fact that Ms. Mack did not **make a claim** for the 1998 year-end bonus does not conclusively establish the company's pattern and practice of paying a bonus only if the individual was still associated with the company. Accordingly, we find no error or abuse of discretion by the trial court in precluding this testimony.

¶ 26 Judgment affirmed.