J-A32040-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CARRIE L. JACKSON, PERSONAL REPRESENTATIVE FOR THE ESTATE OF ROBERT A. JACKSON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CONSOLIDATED RAIL CORPORATION AND NORFOLK SOUTHERN RAILWAY COMPANY, | |
| Appellees | No. 3735 EDA 2015 |

Appeal from the Judgment Entered January 13, 2016
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: March Term, 2014, No. 002160

BEFORE: DUBOW, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.: **FILED MARCH 28, 2017**

Appellant, Carrie L. Jackson, personal representative for the estate of her late husband, Robert A. Jackson, appeals from the judgment entered in favor of Appellee Consolidated Rail Corporation (Conrail) following the jury verdict for Conrail on her negligence claim under the Federal Employers' Liability Act, §§ 1–10, as amended, 45 U.S.C.A. §§ 51–60 (FELA).[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Norfolk Southern Railway Company, co-defendant and nominal co-Appellee, is a subsidiary of Norfolk Southern Corporation, operating throughout the Eastern United States. Conrail provides local rail service for CSX Corporation and Norfolk Southern, as well as track maintenance and
*(Footnote Continued Next Page)*

Intermingling various legal theories and arguments, Appellant asks this Court to reverse the jury verdict and remand for a new trial. We affirm.

We derive the facts of this case from the trial court's opinion and our independent review of the record. (**See** Trial Court Opinion, 6/08/16, at 1-2). The underlying facts are not in substantial dispute, even though the parties disagree on the applicable legal principles and the consequences.

On Monday, March 28, 2011, Mr. Jackson was employed by Conrail as a foreman of a tie gang at its depot in Bayonne, New Jersey. In the late afternoon of that day, Mr. Jackson picked up a hydraulic jackhammer to replace tie spikes which had previously been removed from the track. When he picked up the jackhammer, he felt something in his chest. (**See** N.T. Deposition of Robert A. Jackson, 4/12/12, at 21). Mr. Jackson took an aspirin from a co-worker and tried to "walk it off." (**Id.**). He thought he might have pulled a chest muscle. He felt sick to his stomach. He had "no idea" what was the matter, (**id.** at 23), but he couldn't catch his breath, and he felt that he was coughing too much. (**See id.** at 24); (**see also id.** at 45) ("I didn't know what it was."). Mr. Jackson did not think he was having a heart attack. (**See id.** at 64). His co-workers took him back to Conrail's local headquarters in Elizabeth, NJ.

*(Footnote Continued)* _____

related services, apparently by contract. The defendants took the position that Norfolk Southern could not be liable as a matter of law because it had no employment relationship with Mr. Jackson. The verdict slip referred to Conrail only.

At the Elizabeth office, Mr. Jackson turned down offers of immediate nearby medical care from his fellow employees, several times, including calling an ambulance, visiting a nearby hospital, and repeated suggestions by his supervisor, John Falcao, to go to Concentra, a walk-in urgent care medical facility half a block from the Elizabeth Conrail office where they were, or to a nearby hospital. (*See* N.T. Trial, 6/23/15, at 135).

Mr. Jackson later testified that he wanted to go to a "regular hospital" near his home. (N.T. Deposition of Robert A. Jackson, at 27; *see also id.* at 45 ("I told him I wanted to go to a hospital by my house."); Trial Ct. Op., at 1). After refusing repeated offers by various Conrail employees of nearby medical help, Mr. Jackson requested to be taken home. (*See* Trial Ct. Op., at 5).

A co-worker drove Mr. Jackson home. Before arriving home, however, after talking with his wife by cell phone, he decided to go to the emergency department of the Jersey Shore University Medical Center in Neptune, New Jersey. (*See* N.T. Deposition of Robert A. Jackson, at 30). Mr. Jackson was familiar with the Jersey Shore Medical Center, which was located near Route 33, the road he used on the way to his home in Freehold, NJ. He thought of it as a "good hospital." (*Id.*).

Medical staff at Jersey Shore diagnosed a heart attack (myocardial infarction). (*See* Deposition of Donald Rubenstein, M.D., 5/12/15, at 10). Mr. Jackson underwent surgery and post-surgical treatment.

Mr. Jackson later filed suit. At his deposition, he admitted to a history of heart problems going back to 2002, including an angioplasty, which he did **not** disclose in his medical history when applying to Conrail. (**See** Deposition of Robert A. Jackson, at 53-55). Mr. Jackson also admitted to a half-a-pack a day cigarette smoking habit. (**See id.** at 55).

Mr. Jackson was eventually put on a waiting list for a heart transplant, but kidney issues made it more difficult for him to get one. (**See id.** at 32). After various complications, still awaiting a transplant, he died three years later, on July 12, 2014, of congestive heart failure.[2] Medical records at the time of his death confirmed that Mr. Jackson had had a heart attack eight years earlier.[3]

The essence of the complaint was that Conrail was negligent under FELA for failure to provide Mr. Jackson with "timely and adequate emergency medical care," by calling 911, an ambulance, or taking him to "the closest hospital." (Complaint, 3/14/14, at unnumbered page 3, ¶¶ 20, 21, 22). The complaint alleged that Conrail's negligence contributed to or aggravated the severity of Mr. Jackson's heart attack, resulting in permanent damage to his heart. (**See id.** at ¶¶ 15, 24, 33).

---

[2] Mrs. Jackson was substituted as plaintiff after the death of her husband.

[3] Mr. Jackson's cause of death was officially identified as congestive heart failure with an onset of **eight years** earlier, as a consequence of cardiomyopathy, also eight years previously. Hypotension was also listed as a cause of death. (**See** Death Certificate of Robert A. Jackson, 7/22/14).

The jury rendered a defense verdict of no negligence. Appellant's counsel filed a rambling twenty-five point post-trial motion, which, *inter alia*, included a challenge to the weight of the evidence. (**See** Plaintiff's Post-Trial Motion, 7/02/15, at 1-5). The motion also asserted that "[t]he [c]ourt ruled as a matter of law that Defendant had a duty to provide medical assistance based upon the special circumstances of Robert A. Jackson post heart attack." (**Id.** at 2 ¶ 8).

The trial court denied the motion, after a hearing. Notably, in denying the post-trial motion, the trial court rejected counsel's numerous inter-related assertions that the court had ruled explicitly that Conrail had a specific duty to assist Mr. Jackson. This timely appeal followed.[4]

Appellant presents two questions on appeal:

> I. Whether it was error for Attorney Hohn (defense counsel) to disregard the trial court's ruling and instructions that Conrail had an affirmative non delegable duty to provide Robert Jackson with timely medical assistance?
>
> II. Whether it was error for the jury to disregard the trial court's instructions that Conrail had an affirmative non delegable duty to provide Robert Jackson with timely medical assistance?

(Appellant's Brief, at 8).

Both of the questions presented involve jury instructions.

_____

[4] In response to court order, counsel for Appellant filed a rambling twenty-two item statement of errors on December 22, 2015. The trial court filed an opinion on June 8, 2016. **See** Pa.R.A.P. 1925.

In examining [jury] instructions, our scope of review is to determine whether the trial court committed [a] clear abuse of discretion or error of law controlling the outcome of the case. Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue. A charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said or unless there is an omission which amounts to fundamental error. A reviewing court will not grant a new trial on the ground of inadequacy of the charge unless there is a prejudicial omission of something basic or fundamental. In reviewing a trial court's charge to the jury, we must not take the challenged words or passage out of context of the whole of the charge, but must look to the charge in its entirety.

*Stewart v. Motts*, 539 Pa. 596, 606, 654 A.2d 535, 540 (1995) (citations omitted).

*Boutte v. Seitchik*, 719 A.2d 319, 324–25 (Pa. Super. 1998).

Here, Appellant first claims defense counsel disregarded a ruling and instructions from the trial court. (*See* Appellant's Brief, at 16-29). We disagree.

Preliminarily, we are compelled to note that counsel for Appellant misstates the record. In Appellant's Statement of the Case, counsel asserts that the trial court "**ruled as a matter of law that Defendant had a duty to provide timely medical assistance based upon the special circumstances of Robert Jackson post heart attack** [sic]." (Appellant's Brief, at 10) (emphasis added). In support, counsel cites "N.T. [Trial], 06/23/2015, at 4:14-17." (*Id.*).

This is demonstrably inaccurate. The trial court never made the ruling defense counsel allegedly ignored. All the trial court did in the cited passage was to deny the defendants' motion to preclude evidence that Conrail allegedly failed to provide medical assistance, in effect leaving the issue for the jury. (**See id.**).[5] On this first claim, counsel for Appellant otherwise fails to identify any specific ruling or instruction defense counsel supposedly disregarded. (**See** Appellant's Brief, at 16-29).

To the contrary, in a rambling argument consisting mostly of deposition excerpts with no further analysis, counsel **never** raises the issue of disregarded rulings at all. (**See id.**). At the end, counsel quotes defense counsel's final argument, referencing the duty of care, in anticipation of the trial court's jury charge. (**See id.** at 29; N.T. Trial, 6/25/15).[6] Counsel did

_____

[5] The defendants (Conrail and Norfolk Southern) argued in essence that there was no duty to render medical assistance to Mr. Jackson because he was not "helpless" within the meaning of the FELA, and there were no "special circumstances" which applied. (**See** Defendants' Motion *in limine* to Preclude Evidence and Argument Regarding Their Alleged Failure to Provide Medical Assistance," 3/25/15, at 1-6). For clarity, we state the evidentiary ruling verbatim:

> Second motion, control N. 15033334, defendant's motion to preclude evidence regarding Conrail's failure to provide medical assistance. Likewise, we are denying that motion.

(N.T. Trial, 6/23/15, at 4 lines 14-17).

[6] Counsel omits defense counsel's conclusion:

*(Footnote Continued Next Page)*

not object at trial, and raises no objection on appeal.[7]   Accordingly, Appellant's first argument is waived.  ***See*** Pa.R.A.P. 2119(a), (c), (d), and (e).

Moreover, it would not merit relief.  It is certainly true that the trial court charged the jury that:

> Under the Federal Employers' Liability Act, Conrail, the defendant, had an affirmative non[-]delegable duty to use **reasonable care** to furnish the plaintiff Robert A. Jackson with a **reasonably safe** place to work and provide him with safe, **reasonably safe** [sic] working conditions.
>
> This duty to provide a safe workplace is an affirmative one.

(N.T. Trial, 6/25/15, at 78) (emphases added).

The trial court also instructed the jury, in pertinent part, as follows:

> In this case the plaintiff has the burden of proving that each of the following is more **likely true than not**: First, that the defendant Conrail was negligent; and, second, that the negligence of Conrail was a cause or contributed to bringing about the harms and damages that Mr. Jackson had. The plaintiff also has the burden of proving the extent of any damages caused by the defendant's negligence.

*(Footnote Continued)* _____

> There is no evidence in this case that the railroad breached that duty or any evidence that it failed to do what a railroad company is supposed to do and provide a reasonably safe place to work for their [sic] employees.

(N.T. Trial 6/25/15, at 63).

[7] In any event, we discern no legal error in defense counsel's summary of the law he anticipated the trial judge would give to the jury.

In your determination of the facts you consider only the evidence which has been presented in court and the inferences which flow and can be derived from that evidence. You don't rely on supposition. You don't guess on any matters that are not in evidence. And you will not regard as true any evidence that you find to be incredible even if it wasn't contradicted in court. Your determination of the facts — I know that you already know this — should not be based on empathy for any party or prejudice against any party in this case.

(N.T. Trial, 6/25/15 at 69 lines 5-25, 70 line 2) (emphasis in original).

Later in its instruction the trial court added:

In this case the plaintiff claims injury by the negligent conduct of the defendant. **You know that the plaintiff has the burden of proving those claims.**

The defendant in this case denies the plaintiff's claims. Defendant asserts that the plaintiff was negligent and the plaintiff's own negligence caused or contributed to his injuries. The defendant has the burden of proving this affirmative defense.

The issues for you to decide as a jury in accordance with the law as I am instructing you is: Was the defendant negligent? Did the defendant's conduct cause or contribute to injury to the plaintiff? Was the plaintiff negligent? Did the plaintiff's conduct cause or contribute to his own injury?

(N.T. Trial, 6/25/15 at 86 lines 8-14) (emphasis added).

What the trial court indisputably did **not** do, is decide the ultimate issue for the jury. In point of fact, the trial court never ruled, as a matter of law or otherwise, that Conrail had a duty to provide timely medical assistance "based upon the special circumstances of Robert Jackson post heart attack [sic]." (Appellant's Brief, at 10). Indeed, if the trial court had

done so, it would have improperly usurped the role of the jury as fact-finder. We also note that the foregoing (proper) instructions are incompatible with counsel's claim that the trial court had already precluded consideration of the issues as a matter of law. Appellant's first issue is waived and would not merit relief.

Appellant's second claim fails for similar reasons. (**See** Appellant's Brief, at 29-30). Appellant argues the jury disregarded the trial court's instructions. (**See id.**). We disagree.

In support, Appellant cites three brief excerpts from the trial court's instructions, conflated into a single quotation. (**See** Appellant's Brief, at 29-30) (citing N.T. Trial, 6/25/15 at 69 lines 5-11; 78, lines 18-25; 80, lines 1-11). None of them, taken together or separately, support the claim that the trial court ruled as a matter of law that Conrail had a duty to provide timely medical assistance based on the special circumstances of Mr. Jackson "post heart attack." (Appellant's Brief, at 10).

We observe that the trial court's instructions cover almost thirty pages of the trial transcript. (**See** N.T. Trial, 6/25/15, at 66-95) It is well-settled that we review a trial court's charge to the jury in its entirety. **See Boutte v. Seitchik**, **supra** at 325. On independent review, we find no support for Appellant's assertion that the trial court ruled or instructed the jury that Conrail had a plaintiff-specific duty as a matter of law.

The jury did not disregard the trial court's proper and correct instructions. There is no basis in the record to conclude otherwise. The trial court never gave the dispositive instruction counsel for Appellant would have us assume it did.[8] Appellant's second claim is waived, and, lacking any basis in the facts or the law, would not merit relief.

We note that the trial court, in an apparent effort to address Appellant's rather convoluted twenty-two item statement of errors, concluded that "the gravamen of Appellant's appeal" was a challenge to the weight of the evidence. (Trial Court Op., at 3 n.1).

We are sympathetic to the commendable efforts of the trial court to impose some order on such consistently unfocussed claims. Nevertheless, we are compelled to note that counsel for Appellant failed to include a weight claim in the statement of questions presented. (**See** Appellant's Brief, at 8). Furthermore, he failed to develop even a semblance of an argument in support of this claim.[9] (**See id.** at 12-30). Accordingly, the weight claim would be waived as well.

_____

[8] Moreover, by not referencing where in the record the supposed instruction appeared, counsel for Appellant fails to comply with Pa.R.A.P. 2119(c). It is not the role of this Court to scour the record to find evidence to support a litigant's argument. **See J.J. DeLuca Co., Inc. v. Toll Naval Assocs.**, 56 A.3d 402, 411 (Pa. Super. 2012).

[9] Appellant's Brief refers to weight of the evidence twice, both times in the "Statement of Case." (**See** Appellant's Brief, at 9). There is no argument to support a weight claim. As already noted, Appellant's actual argument is

*(Footnote Continued Next Page)*

Moreover, it would not merit relief.

> The decision of whether or not to grant a new trial based upon a claim that the verdict is against the weight of the evidence rests with the trial court. On appeal the test is not whether the appellate court would have decided the case in the same way but, rather, whether the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative, so that right may be given another opportunity to prevail.

*Vattimo v. Eaborn Truck Serv., Inc.*, 777 A.2d 1163, 1164–65 (Pa. Super 2001), *appeal denied*, 796 A.2d 319 (Pa. 2002) (citations and internal quotation marks omitted). "[T]he fact finder is free to believe all, part or none of the evidence, and the credibility of and the weight to be accorded the evidence produced are matters within the province of the trier of fact."

*Rose v. Annabi*, 934 A.2d 743, 747 (Pa. Super. 2007) (citation omitted).

---

*(Footnote Continued)* ───────────

mostly narrative driven, heavily reliant on extensive quotes from fellow Conrail workers, *seriatim*, with essentially no follow-up analysis or linkage to legal principles. (*See id.* at 19-28). It posits, in effect, that decedent's fellow employees, some of whom had CPR training, knew or should have known that Mr. Jackson's condition was a heart attack (even though he admitted he did not), or at least a serious condition requiring immediate attention, despite his denials and refusal of nearby treatment. Even so, the excerpts confirm that Mr. Jackson steadfastly refused treatment. For example:

> Q. What do you remember?
> A. I asked him if he needed to go to the hospital.
> Q. What did he say?
> A. He said no.

(*Id.* at 26) (citation omitted).

Here, the trial court decided that the jury's verdict was not contrary to the weight of the evidence and did not shock the conscience of the court. (**See** Trial Ct. Op., at 6). On independent review, we discern no basis to disturb the trial court's decision. There was ample evidence in the trial record for the verdict in favor of Appellee and against Appellant.

It bears continuing strong emphasis that the record supports a finding that Mr. Jackson refused multiple offers of local medical care in North Jersey in favor of going home and visiting his own doctor, or a hospital he preferred. Conrail had no duty to impose local medical care on him against his will, under FELA or otherwise. It could have been liable if it did.

Appellant claims that Mr. Jackson was so "out of it," (Appellant's Brief, at 10), that he could not make decisions for himself. In the first place "out of it" is neither a qualified medical diagnosis, nor, without more, proof he was "helpless" under FELA. Furthermore, the jury was entitled to infer from the evidence that the claim is belied by the choices Mr. Jackson made about his own treatment. He refused local treatment, and, far from claiming helplessness, defended that refusal in his deposition a year later. (**See** Deposition of Robert A. Jackson, 4/12/12, at 27-28).

He re-assessed his choices as he proceeded back home and ultimately decided, in talking by cell phone with his wife, to go to an emergency room

instead of going directly home.[10]  Appellant failed to prove that Mr. Jackson was "helpless" under the FELA such as to impose a duty on Conrail to provide him with involuntary medical treatment.

Appellant also argues that some of the Conrail employees had CPR training and should have known the signs and symptoms of a heart attack. (*See* Appellant's Brief, at 12, 14, 20).  But CPR training, however beneficial, does not convert a railroad track employee into a medical diagnostician, let alone a certified cardiologist, such as to permit him or her to override the will of an employee who declines treatment.

Notably, Dr. Howard Cobert testified it was inappropriate to expect rail employees to diagnose someone who was acutely ill and required emergency intervention.  (*See* Deposition of Howard S. Cobert, M.D., 6/23/15, at 12).

Appellant places great weight on *Cortes v. Baltimore Insular Lines, Inc.*, 287 U.S. 367 (1932).  (*See* Appellant's Brief, at 12, 14, 30; Appellant's Reply Brief, 9, 11, 18).  The reliance is misplaced.  *Cortes* was a Seaman's Act case, long ago superseded by statute,[11] which refers to FELA by analogy.  Moreover, *Cortes* concludes that under FELA a common carrier

_____

[10]  Appellant claims the delay in treatment aggravated Mr. Jackson's condition.  Even if this were true—which we need not decide for this appeal—that was the choice Mr. Jackson made for himself.  It is worth remembering that Mr. Jackson repeatedly confirmed that at the time he did not think he was having a heart attack (despite his own history of heart problems).

[11] *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 33 (1990).

is **not** subject to a duty "to give maintenance or cure to sick or disabled employees". . . "except in special circumstances[.]" **Id.** at 376. Counsel for Appellant, unsurprisingly, claims special circumstances, but never specifically explains why or what the special circumstances are. (**See** Appellant's Brief, at 14). Appellant failed to meet her burden of proof.

In any event, on the very issues Appellant needed to establish liability in this case, (*viz.*, negligence and causal relationship), **Cortes** remanded to the trial court. **See Cortes**, **supra** at 378. Appellant's arguments do not merit relief.

While on the job, Mr. Jackson suffered what was later diagnosed as a heart attack. He did not think he was having a heart attack (even with his own undisclosed cardiac history). He adamantly refused any and all offers from his supervisor and fellow employees, of immediate medical help, including to a clinic just down the street. He asked for a ride home and was given one. On the way, he decided to visit a hospital emergency room instead.

Any delay in Mr. Jackson's obtaining medical treatment was the direct result of the choices he made to decline treatment near work, and finally to go to a hospital of his choice closer to home. The jury had ample evidence to conclude Conrail violated no duty it had to Mr. Jackson. The jury did not disregard the trial court's instructions. The trial court properly denied Appellant's challenge to the weight of the evidence.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/28/2017